## WILLIAM TODD v. E. B. DYSART, ADMINISTRATOR.

The guardian of a minor's estate is a competent witness, in a suit to which he is not a party, although the interest of his ward will be affected by its result.

If an objection to testimony relate solely to the competency of the witness, and not to the materiality of the matter concerning which he is offered, and the court exclude the witness, upon the ground of incompetency; *primâ facie*, it will be deemed, that the matter proposed to be proved by the witness, was material and relevant.

Although the improper exclusion of evidence does not always afford a sufficient ground for the reversal of the judgment, yet, in a case peculiarly of fact, depending upon the credibility of witnesses, and the weight to be given to evidence, and where the testimony offered went to disputed facts, and to the credit to be attached to the witnesses on the other side, it will be deemed material, and its rejection ground for a reversal of the judgment.

ERROR from Shelby. Tried below before the Hon. A. W. O. Hicks.

This suit was brought by William Todd, against the defendant in error, administrator of William Todd, deceased, who was the father of the plaintiff, for the recovery of two negro slaves, named Frank and Sarah, which the plaintiff claimed in his own right. The defendant, as administrator, claimed them as belonging to the estate.

The proof showed, that the slaves had originally belonged to the deceased, who conveyed the same, by deed, to the plaintiff, and also delivered them. The plaintiff, at the time he thus acquired them, was living on the Sabine river, and in the year 1851, he removed to his father's house, and conveyed to his father, the said slaves. He remained at his father's residence until the latter part of the year 1853, and then removed to a farm about a mile and a quarter distant. The father died in the year 1854.

The plaintiff adduced testimony to show, that notwithstanding the conveyance to his father of the slaves, it was, in truth, not treated and understood between them, as anything more than a conveyance of the slaves to be held in trust, for him; and that when he left his father's residence, and removed to the farm, as stated, with the consent and approbation of his father, he took with him the said slaves, and kept them up to the time when they were forcibly seized and taken away from him, after his father's death; and that, during the period that he remained with his father, both parties recognised and treated the slaves as belonging to the plaintiff, as was shown by a contract, which plaintiff proved to have been made, namely, that the plaintiff was to have one-fourth of the corn, and a fifth portion of the rest of the crop, to be made on the plantation of the deceased, during the years 1853 and 1854; that the slaves, Frank and Sarah, worked with the slaves of William Todd, Sr., and William Todd, the plaintiff, superintended the hands during the year 1853. The plaintiff proved the admissions of his father, made during the years 1853 and 1854, that the negroes in controversy belonged to the plaintiff; that he had explained the reason of his (the deceased) having the apparent right to them, by stating that James Hanks had sued the plaintiff, and that he did not intend that his property should be sacrificed. The plaintiff claimed the slaves, also, by a title acquired under the statute of limitations of two years' adverse possession, since the date of the deeds to his father, in 1851.

The defendant introduced evidence of a rebutting character,

consisting of the testimony of a witness to the deeds, from the plaintiff to the deceased, who stated that both parties told him that, the consideration of the conveyance back to the deceased, was a settlement between them, concerning the purchase, by the plaintiff, of the slaves, from the deceased, and he being unable to pay for them, conveyed them back. By the same witness, (who was proved to be on ill terms with, and to entertain hostile feelings towards his brother, the plaintiff,) it was also proved, that during the year 1853, the plaintiff was the overseer for their father, and that he had heard the latter, several times, after the execution of the deeds, in 1853, claim the negroes; had heard him speak of selling Frank, if he did not behave himself; and that the deceased simply gave permission to let the negroes wait on the plaintiff's family at night, after they removed to the neighboring farm, but requiring them to work on his plantation in the day-time.

It was also proved, that the plaintiff had, while the said slaves were at his father's, denied owning any property, when called on by the deputy-sheriff for the payment of an execution; that his father had, during the time, paid debts for him; and that he had made statements to the effect that he had no negroes to wait on him, nor would his father let him have any. There was other testimony on either side, rebutting, qualifying, and explaining the testimony thus conflicting, which it is unnecessary to set out in detail.

The plaintiff offered Robert McWilliams as a witness, and "it appearing on examination, that the said McWilliams was the guardian of the Heath children, who were the grandchildren of William Todd, deceased, whose mother was his daughter, and was also dead; the defendant objected to his competency for the said reasons, and the objection was sustained; to which ruling the plaintiff excepted. The said witness was introduced to prove that he had heard William Todd, deceased, say, that the plaintiff had purchased the negro man, Frank, and had paid for him; also, to prove that the witness was a near neighbor of the de-

ceased, and was well acquainted with the family, and the negroes, and to prove the value of the said slaves, and of their hire." The court, among other matters, charged the jury as follows:—

"There are two methods of acquiring property in slaves: 1st. By a written bill of sale. 2d. By a verbal sale from some one who owns them, taking possession of the slaves, and paying the consideration-money, or promising to pay. You will now review the testimony, and ascertain who first owned the negroes. If you shall find that William Todd, senior, first owned them, he remained the owner, unless the testimony shows that he sold them to William Todd, junior, the plaintiff in this case, and if you find no such sale, you will find for the defendant. But if you find that William Todd, senior, sold said negroes to William Todd, junior, they are still his property, so far as this suit is concerned, unless you are satisfied that William Todd, junior, resold or reconveyed said negroes to William Todd, senior. If he did, you will find for defendant.

"Before I proceed further, I will attempt to explain the different methods of proving a sale of slaves. The first kind, that is, a sale by written contract, or bill of sale, is proved by the production of the bill of sale. The second, or a verbal sale, may be proved by the admissions of the party so making the bill of sale. But this species of testimony is sometimes very unsatisfactory, and should be well weighed by the jury, and is entitled to just such weight as you may think such admissions, (if any, of either of the parties, is before you,) entitled to. For instance, if it is in evidence before you, that William Todd, senior, said that the negroes belonged to William Todd, junior, that does not make it so, and is not sufficient evidence of William Todd, junior's property in the slaves, unless you are satisfied from the whole testimony, that the property, in fact, does belong to him; or if William Todd, junior, has denied that the negroes did belong to him, such denial does not deprive him of the negroes, if, in fact, they do belong to him. But admissions of either party are permitted to go before you, as evidence, which you are to consider and weigh, and determine how much credit you will give them,

under all the circumstances of the case. If, from admissions of either party, you are satisfied that the thing, or fact admitted, is true, that is sufficient proof of the thing, or fact admitted.

"And if you find that the plaintiff, William Todd, junior, was once the owner of the negroes, but find that he sold the negroes to William Todd, deceased, and delivered possession of the negroes to said Todd, now deceased, for the purpose of preventing Hanks from collecting a judgment that it was anticipated he might recover from William Todd, junior, that was a sufficient sale and transfer of the negroes to defeat the plaintiff's claim, in this case, although there may have been an understanding between plaintiff and Todd, deceased, that the negroes were to be conveyed back to the plaintiff. A second method of proving property in negroes, by sale and delivery, is, by proof of possession by a party, with acts of ownership, and a claim to own the property. This is sufficient proof in the absence of proof establishing a better claim. So you will look to the whole testimony, and find to whom the property belongs."

Another portion of the charge reads: "But there is another method of acquiring title, by operation of law, generally called acquired title by the statute of limitation. If either party held the exclusive possession of said slave or slaves, claiming them, or either of them, as his property, in opposition to the claim of the other, for two years next preceding the taking the negroes by the defendant, such claim and possession gave the possessor the title," &c.

There was a verdict and judgment in favor of the defendant.

*Clark & Walker*, for the plaintiff in error.

*T. W. Jones*, for the defendant in error.

*W. W. Wallace*, also for the defendant in error.—The bill of exceptions to the ruling of the court, in excluding the evidence of McWilliams, does not show the importance or pertinency of his testimony. If intended to prove conversations with William

Todd, senior, in reference to the slaves, or his admissions as to the title of his son, the *point of time* of such admissions, should appear in the bill of exceptions. If they were made after the sale to the son, in 1849, and before the re-sale to William Todd, senior, in December, 1851, they were not applicable to any issue in the cause. The disputed title arose after December, 1851.

But whatever may be the legal character of these rulings of the court on the two points mentioned, it is respectfully insisted the verdict of the jury was substantially right, and in conformity to the great preponderance and the weight of the evidence. A new trial cannot vary the result, and no wrong or injustice has been committed. The controversy between the parties presented questions of fact, which a jury alone were competent to determine. It is not sufficient, in such a case—a conflict of evidence on questions of fact—that it may not be clear the verdict is right; it must be wrong. (Briscoe v. Bronaugh, 1 Texas Rep. 340; Long v. Steiger, 8 Id. 462; Sims & Smith v. Chance, 7 Id. 569; 16 Id. 94; Sayle's Prac. 383.)

Where the verdict is substantially right, and the result of a new trial must be the same, even the improper exclusion of evidence constitutes no ground for a new trial. The court will not do a vain thing, or correct an unimportant error, at the expense of substantial justice. In Shannon v. Taylor, 16 Texas Rep. 422, the court said, where evidence had been excluded; "the evidence ought clearly to have been admitted, and if admitted, the verdict could not legally have been different. It is manifest the result must be the same on a new trial." And the new trial was, accordingly, refused. 2 Graham on New Trials, 671, 672; and Bohr v. Steamboat Baton Rouge, 7 Sm. & Marsh. 715, are strong authorities on this point.

There seems to be no reasonable foundation for the idea, that the court below charged upon the weight of the evidence, or gave undue prominence to the nature of loose oral statements. The weight of the evidence was fairly submitted to the jury, on sound principles of law.

Todd v. Dysart.

WHEELER, C. J.—It is not perceived, that the charge of the court is obnoxious to the objection, that it is a charge upon the weight of evidence. If the proposition, that the admissions of William Todd, senior, that the slaves in controversy were the property of the plaintiff, William Todd, junior, was not sufficient evidence of William Todd, junior's property in the slaves, unless the jury were satisfied, from the whole evidence, that the property did in fact belong to him, stood alone, unqualified by other portions of the charge, it might be obnoxious to objection. It might with reason be contended, that its effect was to induce the jury to suppose, that the admissions of the party, in whose right the defendant claims, were not of themselves, sufficient evidence of title in the plaintiff, and that to warrant them in finding for the plaintiff, they must be satisfied by other evidence, independently of the admissions of the plaintiff's ownership. But this was not what the court intended ; for in the same connexion, the jury were instructed, that they were to give to the admissions of the parties, respectively, the weight to which they thought them entitled, and if from the admissions of either party, they were satisfied that the fact was as stated, the admissions were sufficient evidence of the fact. What the court intended by the instructions, given upon this point, evidently was, that the admissions proved, were not conclusive evidence of the fact, and did not operate as an estoppel upon the party ; and this was undoubtedly correct, as applied to the evidence in this case. Parol or verbal admissions, which have been held conclusive on the party, are in general, those only, on the faith of which, a court of justice has been led to adopt a particular course of proceeding, or on which another person has been induced to alter his condition. (1 Greenleaf, Ev. § 204.) The admissions, to which the witnesses deposed, do not appear to have been of that character. They do not appear to have influenced the conduct of any one. As a whole, we do not think the charge of the court upon this point, was calculated to mislead.

But there was error in excluding the testimony of the witness,

McWilliams. The objection to the witness was, that he was incompetent, because he was the guardian of certain of the distributees of the estate of William Todd, senior. His testimony might conduce to diminish the fund, in which his wards were interested. But he had no interest in the result of the suit, or if he had an interest, it was adverse to the party calling him. It is clearly settled, that his interest as guardian, merely, was not such as to disqualify him, though he had been called by the defendant. (1 Cow. & Hill, Notes to Phil. Ev. 151, n., 107–146; 1 Green, Rep. 153; Miller v. Thatcher, 9 Texas Rep. 482.) He was not incompetent to testify at the call of the plaintiff in this suit.

It is insisted, that it was not error to exclude the witness, because it does not appear at what time the admissions, to which he was called to testify, were made, and it may be that the testimony would not have been material. But it is to be observed, that this was not the ground of objection, or the ground on which the court proceeded, in excluding the evidence. There was no objection to the materiality, or relevancy, of the proposed evidence. The objection was to the competency of the witness, and upon this ground his testimony was excluded. The objection did not call on the plaintiff to state, what he proposed to prove by the witness. *Primâ facie*, the evidence proposed was material, and as the objection went solely to a question of competency, it is to be taken, that it was material.

It is further insisted, that although the evidence was improperly excluded, yet upon the whole evidence, it is not a ground for reversing the judgment. We think differently. It is not, it is true, every improper ruling upon the admissibility of evidence, which will require this court to reverse the judgment of the court below, refusing a new trial. Thus, it is held, "where it is clear, that if the rejected evidence had been admitted, it could not have changed the result, a new trial will not be granted;" (2 Graham & Waterman on New Trials, 271,) and the refusal of a new trial, in such a case, will not be a ground of reversing the judgment. (Bohr v. Steamboat Baton Rouge, 7 Sm. & Marsh, 715.) But we do not think that principle applicable to the present case.

It was peculiarly one of fact, depending upon the credibility of witnesses, and the weight to be given to evidence. The proposed evidence went to disputed questions of fact, upon which the question of title depended, and to the credit to be attached to the statements of some of the defendant's witnesses, introduced to disprove title in the plaintiff. The testimony was, therefore, very material to the plaintiff. We cannot say, what influence it might have had upon the verdict of the jury; and are of opinion, that its exclusion is error, for which the judgment must be reversed, and the cause remanded.

Reversed and remanded.

Roberts, J., did not sit in this case.