The STATE of Texas, Appellant,

v.

W. C. GIRDNER et ux., Appellees.

No. 15049.

Court of Civil Appeals of Texas.

Dallas.

Feb. 10, 1956.

Rogers & Rogers, Sherman, for appellant.

Freels, Elliott & Nall, Sherman, for appellees.

CRAMER, Justice.

This is a condemnation proceeding. In its pleading the State alleged that it was at that time constructing, laying out, and reconstructing a State farm to market highway which had been surveyed through, across, and upon a strip of land in Grayson County owned by the Girdners and described in the pleading by metes and

bounds; which strip of land was alleged to contain 2.263 acres of land, more or less, of which 0.388 acres lies within the existing limits of the existing road, the fee simple title to which is owned by appellees, the Girdners, plus an easement across other land owned by appellees, for drainage purposes and "for the construction, reconstruction, widening, deepening, and repairing of a certain channel for drainage purposes"; and described said land also by metes and bounds and as tracts 27A and 27B; tract 27A containing 0.069 acres more or less; tract 27B containing 0.195 acres of land more or less; together with all other usual allegations.

After the court duly appointed Commissioners and they had assessed damages at $1,400, the Girdners filed exceptions and perfected their appeal to the County Court. The jury trying the cause in county court, after hearing the evidence, found in answer to special issues submitted to them that: (1) The market value of the strip of land condemned for highway purposes at the time it was condemned, considered as severed land, was $945; (2) the market value of the Girdner land exclusive of the strip of land condemned immediately before the strip was taken for highway purposes, was $11,865 ($175 per acre); and (3) that excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by the Girdners in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, the market value of the remainder of the Girdner tract of land immediately after the taking of the strip condemned for highway purposes, was $9,630 ($146 per acre).

On such findings and the undisputed evidence the court entered judgment in favor of the Girdners for the proper amount based on such verdict and this appeal has been duly perfected by the State.

Appellant briefs five points of error. Point 1 asserts error in holding the State's witness Duff Hood "incompetent to testify." Appellees counter that "The record presents no indication that harm resulted to appellant by the exclusion of Duff Hood's testimony, in as much as that witness's testimony was not preserved by bill of exception or statement to the trial court, and the verdict is supported by the evidence."

■ The record shows appellees' farm lies about one mile north of Howe, along the west side of U. S. Highway 77 which runs north and south at that point. A gravel road along the north side of the farm intersects Highway 77. Duff Hood, for fourteen years before the condemnation proceeding was filed, operated a filling station which he rented from the Girdners in the corner of such intersection. Duff Hood testified: "Q. Would you state your name? A. Duff Hood. Q. Your age, please sir? A. Seventy years old." When the above testimony was in, Girdner's attorney objected to the witness's testimony and, with the court's permission, developed that the witness had been convicted of a felony in Grayson County and sentenced to a term of years in our State penitentiary and had never been pardoned. The court after hearing the objection, sustained it and barred the witness from further testimony. In our opinion such action was error. Article 3717, Vernon's Ann.Civ.St., provides: "No person shall be incompetent to testify in civil cases on account of his religious opinion, or for the want of any religious belief, or by reason of having been convicted of a felony."

Our Supreme Court has also held in Pool v. Sneed, Tex.Civ.App., 173 S.W.2d 768, at page 781 [18] (error ref.), "Since there has never been any statutory law prohibiting the witness in question from testifying in a civil case, his disqualification to do so prior to 1925 was not, in our judgment, a part of his punishment, and the legislature was therefore not without authority in 1925 to restore his competency thereafter to testify in civil cases."

The only question under the record here is whether harm is shown, and if so, whether or not it was sufficient to require a new trial; the appellees asserting that there is, (1) no showing of harm; and (2) an absence of any admissible evidence to which the witness would have testified. Appellant, however, asserts that where the witness' testimony is objected to and the objection is sustained solely on the ground of legal incompetence of the witness to testify, it is not necessary that his evidence be shown by the record. In other words, the rule contended for by appellee is not applicable here.

■ The second syllabus in Todd v. Dysart, Adm'r, 23 Tex. 590, states: "If an objection to testimony relate solely to the competency of the witness, and not to the materiality of the matter concerning which he is offered, and the court exclude the witness, upon the ground of incompetency; prima facie, it will be deemed, that the matter proposed to be proved by the witness, was material and relevant." In answer to this, appellee relies on Vernon's Ann. Texas Rules of Civil Procedure, rules 434 and 327 to the effect that no judgment shall be reversed unless the error complained of probably caused the rendition of an improper judgment and that such rule placed the burden upon appellant to show that the error probably resulted in injury to him. Appellee also cites 3–A Tex.Jur. 534 as stating the general rule that error in exclusion of testimony cannot be reviewed when the nature of the proffered testimony is not shown by the statement of facts or a bill of exceptions. However that authority at page 537 states the exception to the general rule as follows: "But it does not apply to a case * * * where the testimony was excluded solely on the ground that the witness was incompetent * * *." Citing Todd v. Dysart, supra. Since the only objection here as to the competence of the witness to testify was sustained, error is presumed if the witness was competent. That was the only question raised here and under such record and the present state of authorities, point 1 must be sustained.

By point 2 appellant asserts error in the overruling of its motion for mistrial based upon statements by counsel for condemnees that since the court had overruled portions of the testimony of their witnesses, the remaining evidence which was placed before the jury distorted the facts. Appellees countered that there was no error in overruling a motion made in connection with objections to the admission and exclusion of certain parts of the witness Chastain's deposition.

Our examination of the petition discloses that Grayson County alleged that the State was constructing and laying out and reconstructing a State farm to market highway which had been surveyed through, across, and upon certain property therein described by metes and bounds and containing 2.263 acres of land, more or less, within the limits of the existing road, the fee simple title to which was owned by the appellees. They further alleged that it was necessary that plaintiffs take, have and hold an easement across other lands therein described for drainage purposes and the construction, reconstruction, widening, deepening and repairing of a certain channel for drainage purposes, describing such land to be subjected to such easement; and that the fee simple title is owned by the appellees. After the Commissioners' investigation, hearing, etc., appellees filed their exceptions and appealed to the county court, where the jury found facts as hereinabove stated. Appellant here complains of the exclusion of certain of the tendered evidence by the witness Chastain by deposition which it states was prejudicial and reversible error. Our examination of the statement of facts shows the parties at the time of the taking of the deposition agreed as follows: "It is agreed by and between counsel for Condemnor and Condemnee that all formalities of taking this deposition, including notice of time and issuance of commission, are waived. It is further agreed that all objections of every kind and character, whether as to form or substance, must be made during the taking of this deposition in order to be preserved for the trial of this cause, or any hearing in this cause. It is

further agreed that all formalities of returning this deposition into court are waived, except the signature of the witness hereto, which may be secured before any notary public"; and that thereafter during the taking of the deposition the following occurred:

"Q. You understand, Mr. Chastain, that the State is suing for and condemning, not for a right of way easement, but for fee title? A. Yes.

"Q. Can you estimate and appraise the value of that 2.263 acres of land that is being taken in this condemnation suit at the time it was filed, which was on or about the 28th of September, 1954? A. Yes.

"The Court: Would you read your objection there, please, Mr. Rogers?

"Mr. Rogers: All right. (Reading.) I want to object to that question and the questions following, that they do not broach an ultimate issue here involved, not consisting of a proper measure predicated upon the proper time and place. You can go ahead and answer it.

"Mr. Nall: (Reading.) I want to rephrase the question. What in your opinion was the actual cash market value in Grayson County, Texas of the 2.263 acres of land, being condemned by the State, at the time it was condemned in September of 1954? A. The land itself I would say at least has a value of $500 an acre.

"Q. Then what in your opinion would be the total value of the land and minerals—let me rephrase that. What in your opinion is the total cash market value in Grayson County, Texas of the land and minerals being condemned by the State in this cause at the time it was instituted in September of 1954?

"Mr. Rogers: There's the objection to the crux of things, his testimony was to the land and minerals and he also states later that his testimony was based on the 2.—based on additional land that wasn't in the issue.

"The Court: I'll sustain any objection to testimony as to the land and minerals.

"Mr. Nall: Well, Your Honor, there is no objection at that point and further on in the deposition when Mr. Rogers said, 'Suppose that there are no minerals being taken, would you have a different evaluation?', and he put a different evaluation on the land without the minerals.

"Mr. Rogers: Well, just put it in. He also said the minerals were worth $100 an acre. We'll just go right through and let the jury hear it.

"The Court: Go ahead and read all of it then. Go ahead.

"Mr. Nall: (Reading.) A. $1,400.-00, including the minerals, and I think that is a cheap figure on the minerals."

The judgment based on the jury's findings, decreed, material here, as follows: "It, therefore, appears to the Court, and the Court so finds from such verdict and the undisputed evidence herein that the State of Texas, plaintiff Condemnor herein, is entitled to have and recover of and from said defendants Condemnees, W. C. Girdner and wife, Bertha Girdner, fee simple title to and possession of the following described premises, exclusive of all oil, gas and other minerals therein on or under and located thereon; which are reserved, saved and excepted unto Condemnees"; and described the land by metes and bounds which comprised the 2.263 acres in the new road, and recited that 0.388 acres lies within the limits of the then existing, or old road; also described the easement for drainage purposes and awarded damages based on such verdict for $3,180 plus interest, costs, etc.; and further decreed that all oil, gas, and other minerals in, on, or under the 2.263 acre tract "be, and the same are, reserved, saved, and excepted unto the condemnees"; also decreed that the State recover the drainage easement sought by it.

Under such record there was no harmful reversible error which would necessitate a reversal of the judgment ap-

pealed from. All the evidence was before the jury on values, and from such evidence the jury found the value (a) of the fee simple title (land and minerals); (b) of the fee title without the minerals; and (c) the value of the minerals alone. These findings are supported by evidence sufficient, as against the attack here made, to support the judgment. Point 2 is overruled.

 Point 3 asserts error' in overruling appellant's motion for mistrial based on evidence of the unaccepted offer placed before the jury by counsel for condemnees, which is countered by appellees that there was no error in such ruling. On redirect examination appellee Mrs. Girdner testified that the portion of land taken was "more valuable than the rest of it"; that it was on a hill abutting Highway 75; presents better building possibilities than any place else; she could get approximately three 100-foot frontage lots along there; that the road has been cut just in front of her house; that if you took two steps or went six feet from the corner of this house you would be at the edge of that road; there is a cut there now; the cliff there is between five and six feet deep where they cut the road down; that they paid $10,000 for the place and thereafter painted it, redecorated the interior, added a bathroom, put in gas and sewerage, graded the yard, leveled and sodded it, put in a driveway, all at an expense of $3,000; that she knows Mr. Estes and that he offered her in excess of $220 per acre for the place. Appellant objected and the court sustained the objection and instructed the jury not to "consider any specific order testified to by the witness for any purpose in your deliberations."

At the instance of appellant the jury was then sent out and appellant moved "for a mistrial, because of the highly prejudicial and inflammatory nature of the testimony of an unaccepted offer, denying the counsel for the State of Texas the right of cross examination", etc. Such motion was overruled and an exception taken. The only question is whether the instruction cured the error. There is a presumption that the jury obeyed the instruction and the only

question is whether the evidence is of such a nature that it was clearly calculated to inflame the minds of the jury, and is of such a character as to suggest the impossibility of withdrawing the impression produced thereby on the minds of the jurors. Gulf, C. & S. F. R. Co. v. Levy, 59 Tex. 542; McLean v. McCollum, Tex.Civ.App., 209 S.W.2d 959; Thompson v. Janes, Tex.Civ. App., 245 S.W.2d 718, at page 726.

In our opinion the error here was cured by the instruction. Point 3 is overruled.

 Point 4 asserts error in overruling the motion for mistrial based on the evidence offered by Girdner et al. as to other settlements the State had made along the right of way; which is countered that there was no error when there was no evidence as to other settlements.

Appellant's statement (omitting page references to Statement of facts) is as follows: "Although the right of way which was taken came close to, it did not touch Condemnees' tenant house. Condemnor contended and sought to prove that the farm was just as valuable with the tenant house in the same place it had always been, after the road was built, as it was before the road was built. Condemnees offered their witness, G. D. Hestand, who had theretofore settled with the State of Texas for the right of way on this same road adjacent to his home, and under the terms of his settlement had been paid to move his house. He stated that his property was just west of Girdner's place, on the north side of the road in question; that he owned a five-acre block of land, fronting some two-hundred yards along the road; that he had deeded to the State of Texas a portion of his land along the road; and that for all practical purposes it was the same type of land as that owned by the Girdners; that his house lay more than ten feet from the edge of the right of way. The court excluded the consideration that was paid for this settlement, and instructed the jury to disregard it, to which action Condemnees violently excepted. Condemnor contends that it was prejudiced by this evidence and display, the effect of which was to infer to the jury that

other peoples' houses had been moved by the State, which were not touched by the roadway."

We have read the statement of facts material here and referred to by appellant, and we do not find therein evidence of what the State "had done for and paid others in the same locality." Being unable to find such evidence, and appellant not having referred us to page or pages in statement of facts showing the same, point 4 is overruled.

Point 5 asserts the judgment should be reversed and the cause remanded "because of the prejudicial effect of the foregoing errors, considered in combination." We have examined the record and (excluding point 1 which we have sustained) cannot say that the errors considered in combination were reversible. Point 5 is overruled.

For the reason discussed in point 1, the trial court's judgment is reversed and the cause is remanded for a new trial.