**Anita GARCIA et al., Appellants,**

v.

**CLIFFORD JACKSON FUNERAL HOMES, Appellee.**

No. 983.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Pedro P. Garcia, Corpus Christi, for appellants.

Cecil D. Redford, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for damages arising from the death of Marion Garcia. The deceased's wife and children brought suit for damages alleging that certain acts of negligence by the appellee, Clifford Jackson Funeral Home, were the proximate cause of Marion Garcia's death. Judgment was rendered pursuant to an instructed verdict in favor of defendant. From that judgment, the appellants have duly perfected their appeal to this Court.

The facts of this case, with a few exceptions, do not appear to be in dispute. The deceased, Marion Garcia, became ill at about 7:30 o'clock P.M. on the evening of September 9, 1969, complaining of chest pains and shortness of breath. The deceased's wife, Anita Garcia, called the Angelus Funeral Home requesting that an ambulance be sent to their home. She then called her family doctor, Dr. Fuentes, telling him that her husband was experiencing pain in his chest and shortness of breath. Upon hearing that Mrs. Garcia had already called an ambulance, Dr. Fuentes told her that he would go to the hospital and wait for them there.

Mrs. Garcia then received a call back from a Mrs. Capela (of Angelus Funeral Home) telling her that they had transferred the call to Clifford Jackson Funeral Home because their ambulance was not equipped with oxygen. The deceased's daughter, Mrs. Huckeba, had arrived home by this time. Upon seeing that her father was having difficulty in breathing, she applied mouth to mouth resuscitation to aid his breathing.

After attending to her father, and upon becoming alarmed that the ambulance had not yet arrived, Mrs. Huckeba telephoned the police station telling them that the ambulance had been called (Clifford Jackson) but had not yet arrived. Two police officers arrived a few minutes later, the time being approximately 8:32 P.M., to assist the Clifford Jackson ambulance attendants who had not yet arrived. According to Mrs. Huckeba, the ambulance arrived ten or twelve minutes later. The police officer testified that when they arrived, Mr. Garcia was unconscious.

After the ambulance arrived, the two attendants attempted to give Mr. Garcia oxygen, but were unable to do so. There is conflicting evidence as to the reason for it not being used, the appellants contend that the resuscitator was not in proper working order and the attendants did not know how to use it. A manual hand resuscitator was used on the deceased either at home or on the way to the hospital. The two ambulance attendants and one of the police officers, loaded Mr. Garcia into the ambulance and took him to the hospital. Mr. Garcia received mouth to mouth resuscitation and heart massage in the ambulance.

The evidence shows, although conflicting, that the Clifford Jackson ambulance did not take the most direct route to the Garcia home, nor the most direct route from the Garcia home to the hospital, thus allegedly losing valuable time in obtaining medical aid for Mr. Garcia. Mr. Garcia was pronounced dead upon arrival at Memorial Hospital by Dr. Antonio Fuentes. The record discloses that Marion Garcia had received a check-up by Dr. Fuentes on September 8, 1969, the day before his death. Dr. Fuentes testified that during the check-up, Mr. Garcia's heart "sounded normal" although his blood pressure appeared to be high.

The appellants filed this suit against Clifford Jackson Funeral Home alleging several acts of negligence. They were: 1) the failure of the Clifford Jackson ambulance to take the best route to Marion Garcia's home; 2) failure of the defendant to take the best direct route from Marion Garcia's home to the hospital; 3) the negligence of the defendant in not properly administering oxygen to Marion Garcia; and 4) the failure of the appellee to render first aid and oxygen treatment. To these allegations, the defendant filed a general denial.

At the conclusion of plaintiff's evidence, the defendant filed a motion for instructed verdict alleging that no act of negligence alleged by the plaintiffs had been proved to be a proximate cause of the death of Mr. Garcia and hence, there was no issue of proximate cause to be submitted to the jury. The trial court granted the defendant's motion for instructed verdict and rendered judgment for defendant. From that judgment, the appellants have duly perfected their appeal.

The sole question before us then is directed to the trial court's instruction of a verdict for the defendant. Appellants contend there was sufficient evidence with respect to proximate cause, which would require the trial court to submit issues to the jury. A proper determination of that question must hinge on an acceptance of the evidence and the inferences therefrom in their aspects most favorable to the appellants' cause and to discard all contrary evidence and inferences. *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953); *Bass v. General Motors Corporation*, 491 S.W.2d 941 (Tex.Civ.App. —Corpus Christi 1973, writ ref'd n. r. e.); *McKethan v. McKethan*, 477 S.W.2d 357 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

Applying the above rule, it is clear to us that the appellants did raise fact issues as to whether the alleged acts by appellee of: 1) not taking a direct route to the deceased's home; 2) not taking a direct route from the deceased's home to the hospital; and 3) failing to properly apply the oxygen to the deceased, were negligent. However, the main question before us is whether there was any evidence to support an issue of proximate cause to such issues. We do not believe there was.

The proof that must be made to establish causal relation is easily stated in general terms, but it is often difficult to determine whether a sufficient showing has been made to warrant submission of the issue to the jury. Since liability cannot be made to turn upon speculation or conjecture, it is essential that the evidence show at least a reasonable probability that the defendant's alleged negligent acts were, singularly or collectively, a proximate cause of his death. *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex.Sup.1966); *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703 (Tex.Sup.1970); *Parker v. Employers Mutual Liability Insurance Company of Wisconsin*, 440 S.W.2d 43 (Tex.Sup. 1969). The proof must establish a causal connection beyond the point of conjecture and must show more than a possibility.

In *Insurance Company of North America v. Myers* case, the substance of the doctor's testimony concerning causation was that it was only a possibility that the injury which was incurred, caused the death, not that it was or was not a reasonable medical probability. In denying recovery, the Supreme Court held:

"Causal connection . . . must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation and conjecture."

The only evidence introduced attempting to connect the alleged negligent acts of defendant with Mr. Garcia's death, was the testimony from Dr. Fuentes which is set out as follows:

"Q Okay. Let me ask you this, Doctor. If she had gotten the man to the hospital earlier, and he was alive, if they had got the man to the hospital

earlier, would you have been able to work with the man to save his life? And I need to have you answer in terms of medical probability, please, if you can?

A Time is very important, I'm sure as you-all know, with heart attack. *Something could have probably been done, or, as it was, nothing was done when he got to the emergency room.*

Q Supposing the patient had been taken to the emergency room before you got there, from your experience, working in Memorial Hospital, was the medical staff there equipped and trained to help the man?

A Yes. There are emergency room physicians now and there were at the time. I'm sure there were the interns and residents in the emergency room, and a doctor on call.

\* \* \* \* \* \*

Q If the ambulance attendants—well, I'm going to ask you to assume, Doctor, if I may, that no oxygen was given to him at the house when the attendants got there. If they had been able to give him oxygen there at the house, would that have helped the man?

A Yes. That's the first thing that most of the ambulance attendants will do, is give oxygen, and that's the first thing that is done in the emergency room."

This testimony at most shows that if Marion Garcia had gotten to the hospital sooner than he did, "something could have probably been done . . .", and that oxygen would have helped the man." However, there is no evidence showing that the alleged negligent acts of defendant "in reasonable probability" *caused* Garcia's death. The testimony in the record is not sufficient to show causation or raise an issue of fact as to causation. See *Insurance Company of North America v. Myers,* supra; *Lenger v. Physicians General Hospital, Inc.,* supra;

*Parker v. Employers Mutual Liability Insurance Company of Wisconsin,* supra; *Gibson v. Avery,* 463 S.W.2d 277 (Tex.Civ.App. —Fort Worth 1971, no writ); *Texas Employers Insurance Association v. Goodeaux,* 478 S.W.2d 865 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.).

In *Parker v. Employers Mutual Liability Insurance Company of Wisconsin,* supra, the court was faced with a similar situation to that before us. There, plaintiff went to work in April, 1961, removing radioactive material from one spot to another. He wore protective clothing. In April, 1965, he noticed a swelling on the left side of his neck which when removed in June of 1965, proved to be cancerous and he subsequently died. Justice Hamilton, speaking for the court, wrote:

"The question now before us, then, is what evidence of causal connection between the employment and the plaintiff's injury there must be to justify the judge submitting the case to the jury.

\* \* \* \* \* \*

. . . But this probability must, in equity and justice, be more than coincidence before there can be deemed sufficient proof for the plaintiff to go to the jury."

The expert testimony in that case was to the effect that the etiology (cause) of cancer is really uncertain. The doctor further testified that the cancer "could have" been caused by radiation, but that there was no way to determine the cause. Our Supreme Court in denying recovery held that it was clear that there was no evidence at trial of a causal connection between the cancer and radiation in the expert testimony per se, other than the possibility of such a connection and testimony demonstrating a possibility only is in no way equivalent to testimony implicit with probability.

It was undisputed that Mr. Garcia's death was caused by a myocardial infarction. In order for the plaintiffs to have made out a case against the appellee that would have

permitted them to go to the jury, they would have had to have some evidence that the acts of negligence, on the part of appellee, were a proximate cause of Garcia's death. There must be proof that the negligent acts were a proximate cause, not a possible cause. Plaintiffs' evidence showed no more than a possibility that the claimed negligent acts caused Mr. Garcia's death. Although Dr. Fuentes testified that something could have been done, there was no evidence of what that ("something") might have been or what the probable results would have been. There was no evidence that had the ambulance arrived earlier, or that had oxygen been administered properly, Garcia would have lived. There was no evidence as to the exact time of Mr. Garcia's death. We, therefore, hold that there was no causal connection between the appellee's negligence and Garcia's death in the record before us. Appellants' points of error are overruled.

The judgment of the trial court is affirmed.