**Walter PARRISH and Marjorie Parrish, Appellants,**

v.

**Dr. E.E. BROOKS and Red River Hospital Authority d/b/a Red River General Hospital, Appellees.**

No. 6–92–110–CV.

Court of Appeals of Texas, Texarkana.

May 18, 1993.

Barry G. Johnson, James M. Stanley, Fort Worth, for appellants.

Christian E. Bryan, Cowles & Thompson, Tyler, for appellee Dr. E.E. Brooks.

Ruth Russell Shafer, Davis & Davis, Austin, for appellee Red River Hosp. Auth.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Walter and Marjorie Parrish appeal from summary judgments in favor of Dr. E.E. Brooks and Red River Hospital Authority d/b/a Red River General Hospital. The Parrishes sued Dr. Brooks and Red River, among others, for damages allegedly resulting from the negligent medical treatment of their son, Charles Parrish. We affirm the summary judgment in favor of Red River, but reverse the summary judgment in favor of Dr. Brooks.

### I.

During the evening of August 12, 1988, Charles Parrish was injured in an automobile accident. He was taken by ambulance to Red River Hospital and was examined and treated by Dr. Wade Warren. Dr. Warren was working at the hospital under a contract between Red River and Coastal Emergency Services, P.A., Dr. Warren's employer.

While Parrish was at Red River, Dr. Warren called Dr. Brooks, a staff physician, for consultation. Dr. Warren also began procedures to transfer Parrish to McCuistion Regional Medical Center. According to Dr. Brooks' affidavit supporting his motion for summary judgment, he arrived at Red River at 12:20 a.m. and conducted an expedited examination. He found Parrish's blood pressure low but stabilized. Parrish was receiving fluids. Dr. Brooks agreed that a transfer was proper, and he contends that Parrish was told about the transfer and agreed to it. Parrish was transferred from Red River at 12:30 a.m.

After the transfer, Parrish was seen by an orthopedic surgeon, Dr. Mark Nardone, for care of a fractured femur. Before surgery was begun, Parrish suffered respiratory arrest. He was resuscitated and taken into surgery, where a splenectomy was performed and liver lacerations were sewn and drained. Following surgery, Parrish went into shock and died about 6:00 p.m. on August 13, 1988. On October 24, 1990, his parents filed this suit.

### II.

In reviewing the granting of summary judgment to a defendant, we determine whether the summary judgment evidence establishes that there is no genuine issue of fact and that the movant has conclusively negated one or more of the essential elements of the plaintiffs' cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In deciding whether there is a disputed material fact issue that precludes summary judgment, we take as true all evidence favoring the nonmovant and indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

### III.

The Parrishes allege that Red River was negligent in failing to write the diagnosis of their son's condition on the transfer form and writing an incorrect reason for

his transfer; in failing to transfer available records; in failing to obtain an appropriate receiving physician; in transferring their son while he was unstable; in violating hospital policy and state law in making the transfer; and in allowing Dr. Warren to practice at the hospital while his staff membership was not established.

Many of Red River's defenses are based on the Tort Claims Act, which applies to Red River Hospital Authority as a governmental unit. TEX. CIV.PRAC. & REM.CODE ANN. § 101.001(2) (Vernon Supp.1993); *Sharpe v. Memorial Hosp. of Galveston County,* 743 S.W.2d 717 (Tex.App.—Houston [1st Dist.] 1987, no writ). We reach only Red River's defense based on Section 101.101 of the Tort Claims Act, which requires that a governmental unit be given written notice of a claim against it within six months of the incident underlying the claim. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1986). The notice requirement is not applicable if the governmental unit has actual notice that death, injury, or property damage has occurred. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986).

The Parrishes did not give Red River written notice of the claim until August 13, 1990, two years after the injuries, but they argue that Red River had actual notice by reason of its treatment and transfer of their son. They note that Dr. Brooks served on both the credential and executive committees at Red River at the time of the treatment and transfer. They also argue that the affidavit of Dr. Charles Millikan constitutes summary judgment proof that Red River had actual notice. Dr. Millikan, who has served on several committees at Red River, reviewed Charles Parrish's emergency room records. However, Dr. Millikan's affidavit states that he found nothing inappropriate in his review. Likewise, Dr. Brooks states in his affidavit that the proper standard of care was followed.

■ To constitute actual notice as an exception to Section 101.101(a), the governmental unit must have knowledge of the injury, its alleged or possible fault producing or contributing to the injury, and the

identity of the persons injured. *Rosales v. Brazoria County,* 764 S.W.2d 342, 344 (Tex.App.—Texarkana 1989, no writ); *Bourne v. Nueces County Hosp. Dist.,* 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied).

The summary judgment evidence here does not raise a fact issue that Red River had actual notice of any alleged or possible culpability on its part regarding Charles Parrish's injuries or death. *Rosales v. Brazoria County,* 764 S.W.2d at 344; *Bourne v. Nueces County Hosp. Dist.,* 749 S.W.2d at 632; *see also Vela v. Cameron County,* 703 S.W.2d 721, 725 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.).

■ The purpose of notice is to enable a governmental unit to investigate allegations against it while facts are fresh and conditions are substantially similar so it may guard against unfounded claims, settle claims, and prepare for trial. *City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex.1981). To hold that a hospital had actual notice under Section 101.101(a) merely because it knew a patient received treatment at its facility or died after receiving treatment would thwart the statute's purpose and effectively render it meaningless. We agree with the Corpus Christi court, which said in *Bourne v. Nueces County Hosp. Dist.:*

> A county hospital's emergency room will inevitably receive many injured persons in the course of its operations. In treating these persons, medical personnel may determine the seriousness of the injuries and their cause. The hospital's records will then reflect the determinations. However, unless the records indicate to the hospital its possible culpability in causing the injuries, the hospital has no way of knowing that it might be implicated in a subsequent suit.

749 S.W.2d at 632.

■ Whether a governmental unit has actual notice of a claim is a question of fact. *Alvarado v. City of Lubbock,* 685 S.W.2d 646 (Tex.1985). Yet summary judgment may be proper where no evidence of actual notice exists to raise a genuine issue

of fact. *Vela v. Cameron County*, 703 S.W.2d at 727. There is no summary judgment evidence that shows Red River received actual notice within the meaning of Section 101.101(a). The Parrishes rely on the affidavits of Drs. Brooks and Millikan to establish actual notice, but the affidavits show just the opposite. Neither doctor found any possible fault in Red River's treatment of Charles Parrish. The Parrishes have not controverted the affidavits with any evidence that would show Red River had actual notice.

The Parrishes failed to give timely, written notice as required by Section 101.101 of the Tort Claims Act. Red River did not have actual notice of the Parrishes' claims. Therefore, the claims against the hospital are barred. *Reese v. Dept. of Highways and Public Transportation*, 831 S.W.2d 529 (Tex.App.—Tyler 1992, writ denied).

The Parrishes also sued Red River under the federal "patient dumping" statute. *See* 42 U.S.C.A. § 1395dd(d)(2)(A) (West 1992). We review whether summary judgment was properly granted against this cause of action as well as the state cause of action.

■ The federal cause of action limits damages to those "available for personal injury under the law of the State in which the hospital is located." *Id.* The notice requirement of the Texas Tort Claims Act does not foreclose the Parrishes' federal cause of action because the state notice requirement is procedural, not substantive. Federal procedure must be followed. *See Reid v. Indianapolis Osteopathic Medical Hosp.*, 709 F.Supp. 853 (S.D.Ind.1989).

■ Section 1395dd requires that actions be filed no more than two years after the date of the violation with respect to which the action is brought. 42 U.S.C.A. § 1395dd(d)(2)(C) (West 1992). The Parrishes concede that they missed the federal limitations deadline, but argue that their Section 1395dd claim relates back to the filing of their original petition in the state action. *See* FED.R.CIV.P. 15(c); *see also* TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986). Nevertheless, they failed to file that action within two years of their

son's death. Although they may have timely filed their state claims because of the grace period allowed by the state statute, the federal two-year limitations period in Section 1395dd(d)(2)(C) is absolute and preempts any state provision extending the time for filing. 42 U.S.C.A. § 1395dd(f) (West 1992); *cf.* TEX.REV.CIV.STAT.ANN. art. 4590i, § 4.01(c) (Vernon Supp.1993).

The Parrishes failed to give timely notice to Red River as required by the Tort Claims Act. Limitations has run on their federal cause of action under 42 U.S.C.A. § 1395dd. As the claims are barred, we need not reach any other points of error relating to the summary judgment in Red River's favor.

### IV.

The Parrishes bring four points of error complaining of the summary judgment granted to Dr. Brooks. Before reaching those points, we consider a cross-point raised by Dr. Brooks concerning limitations.

■ Dr. Brooks argues that the Parrishes failed to bring a point of error refuting limitations as a possible basis for summary judgment and, since they failed to rebut one possible ground for the judgment, it must be affirmed. *See Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Community Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 604 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Dr. Brooks' argument presumes that limitations was a possible basis for summary judgment. Summary judgment may be granted only on grounds expressly set out in a written motion, answer, or response. TEX.R.CIV.P. 166a(c); *see also City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

■ Dr. Brooks originally moved for summary judgment on February 21, 1991. His motion specifically raised limitations as a basis for summary judgment. Judge Pesek, the presiding judge at the time, granted Dr. Brooks' motion for summary judgment, along with those of other parties. Thereafter, Judge Pesek vacated his order

granting summary judgment to Dr. Brooks, denied summary judgment, and granted a new trial.

Judge Stephens was then assigned to sit on the case in Judge Pesek's stead. Dr. Brooks filed supplementary motions for summary judgment. These motions raised several grounds for summary judgment, but did not reurge limitations. We conclude, however, that Judge Pesek's order vacating his order granting summary judgment and granting a new trial did not amount to a denial of the motion for summary judgment, but only left the motion pending. *P.V. International Corp. v. Turner, Mason, and Solomon*, 700 S.W.2d 21 (Tex.App.—Dallas 1985, no writ). Thus, when Judge Stephens rendered summary judgment, limitations existed as a viable ground therefor raised in Dr. Brooks' original motion for summary judgment.

■ Dr. Brooks argues that the Parrishes have waived any complaint about summary judgment in his favor on the basis of limitations because they have not brought a point of error in this appeal complaining of the judgment on that basis. Dr. Brooks relies on *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119. The Supreme Court in that case held that, in the absence of a general point of error complaining of summary judgment, there must be a specific point on each possible basis for summary judgment to avoid a waiver of those grounds. The court also held, however, that a general point of error complaining that the court erred in granting the motion for summary judgment is sufficient to allow consideration of all possible grounds on which the court may have granted that judgment. While the Parrishes did not assign a specific point of error as to summary judgment on the basis of limitations, they did assign a point of error (No. 12) in their brief which is a general point complaining that summary judgment was improper because there were genuine issues of fact. Thus, they have not waived the issue.

■ Dr. Brooks argues that summary judgment in his favor on limitations was proper because the Parrishes did not send him a notice letter or bring suit against him within two years of their son's death.[1] There has been a divergence of authority in Texas as to whether notice to one health care provider under Article 4590i, § 4.01(a), tolls limitations as to all those involved, even though they do not receive notice.[2] Our Supreme Court has now ruled that notice to one health care provider tolls the statute as to all those involved in the event. *De Checa v. Diagnostic Center Hosp., Inc.*, 852 S.W.2d 935 (1993). Thus, the Parrishes' notice to Red River tolled limitations as against Dr. Brooks as well, and summary judgment in his favor on limitations was therefore not authorized.

■ The Parrishes also contend that the trial court erred in granting summary judgment based on Dr. Brooks' affidavit. They argue that, rather than setting out

---

1. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 4.01(a), (c) and § 10.01 (Vernon Supp.1993) provide:

   Sec. 4.01. (a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.
   . . . .
   (c) Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.
   . . . .
   Sec. 10.01. Notwithstanding any other law, no health care liability claim may be com-

menced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

2. *See Rhodes v. McCarron*, 763 S.W.2d 518 (Tex. App.—Amarillo 1988, writ denied); *Roberts v. Southwest Texas Methodist Hospital*, 811 S.W.2d 141 (Tex.App.—San Antonio 1991, writ denied); *contra Maddux v. Halipoto*, 742 S.W.2d 59 (Tex. App.—Houston [14th Dist.] 1987, no writ).

the proper standard of care in his affidavit, Dr. Brooks merely states that he was not negligent in conferring with Dr. Warren and that his actions were within the standard of care. The Parrishes argue that Dr. Brooks was required to describe the standard of care with specificity. *See Hammonds v. Thomas*, 770 S.W.2d 1 (Tex. App.—Texarkana 1989, no writ).

The majority opinion in *Hammonds* was concerned about general, conclusory statements regarding medical standards that could not be readily controverted. *Hammonds v. Thomas*, 770 S.W.2d at 2. In his affidavit, Dr. Brooks sets out with considerable specificity the actions that he took and then states that those actions met the standard of care. As he did not rely on generalizations and conclusions, his affidavit is competent summary judgment evidence. *See* TEX.R.CIV.P. 166a(c), (f).

The Parrishes also argue that Dr. Brooks did not establish by summary judgment proof that he reviewed any medical records concerning the care and treatment of Charles Parrish after he left Red River. Thus, they argue, he had no basis for stating whether Parrish was harmed by his treatment at Red River. We disagree. Dr. Brooks states in his affidavit that he reviewed the death summary from McCuistion medical center. He states that this document is kept in the course of regularly conducted business and is of the type reasonably relied on by medical experts. *See* TEX.R.CIV.EVID. 703.

The Parrishes argue that the affidavit of their expert, Dr. Roger Morrell, raises a fact issue regarding Dr. Brooks' care. Dr. Morrell's affidavit states that a consulting physician who examines a patient to be transferred should record his own findings and diagnosis on the patient's chart. Dr. Morrell further asserts that Dr. Brooks violated the standard of care by failing to communicate his diagnosis of internal injuries to Dr. Warren.

Dr. Brooks argues that Dr. Morrell's affidavit cannot raise a fact issue because Dr. Morrell was convicted of thirty-three counts of conspiracy and Medicare fraud in the United States District Court, Eastern District of Michigan. He argues that an affidavit is defective if the affiant fails to establish that he is of legal age, has never been convicted of a crime involving moral turpitude, and is making the affidavit based upon personal knowledge. *See* TEX. R.CIV.P. 166a(f); *Estate of Diggs v. Enterprise Life Ins. Co.*, 646 S.W.2d 573, 575 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

We find no authority holding that a convicted felon cannot be a competent witness. Indeed, until its repeal in 1985, a Texas statute specifically provided otherwise. TEX.REV.CIV.STAT.ANN. art. 3717, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9(1), 1985 Tex. Gen.Laws 3322, and the present Rules of Civil Evidence do not provide for incompetency because of a felony conviction. TEX. R.CIV.EVID. 601; *see also State v. Girdner*, 287 S.W.2d 706 (Tex.Civ.App.—Dallas 1956, no writ). *Estate of Diggs v. Enterprise Life Ins. Co., supra*, relied on by Dr. Brooks, does not require that affiants have no felony convictions. That decision merely recognizes that "[a] recitation that the affiant is of legal age, has never been convicted of a felony and is making the affidavit on personal knowledge ... is not in itself sufficient to show affirmatively that an affiant is competent to testify...." *Estate of Diggs v. Enterprise Life Ins. Co.*, 646 S.W.2d at 575. The opinion then addresses hearsay concerns. *Id.*

Dr. Brooks argues that since the affidavit states that Dr. Morrell suffers from no legal disabilities it therefore contains a misrepresentation. However, Dr. Morrell's affidavit was prepared on March 21, 1991, before his conviction on August 8, 1991. Dr. Morrell's conviction may impair his credibility, but such determination is one for the trier of fact, and his affidavit is not rendered incompetent by the conviction.

Dr. Brooks contends that, even if it is otherwise proper, Dr. Morrell's affidavit fails to raise a fact issue on proximate causation. He argues that the affidavit only alleges that Dr. Brooks' actions caused a delay in Charles Parrish's treatment. He argues that speculation about a

delay in treatment cannot establish that a medical service has proximately caused injury to a patient. *See Garcia v. Clifford Jackson Funeral Homes*, 526 S.W.2d 750 (Tex.Civ.App.—Corpus Christi 1975, no writ).

Dr. Morrell's affidavit reads, in relevant part:

The failure of Dr. E.E. Brooks, M.D., to treat Charles Parrish in accordance with the minimum acceptable standard of care applicable to the care and treatment of a patient with his medical condition caused delay in the performance of emergency surgery and caused Charles Parrish to suffer cardiac arrest prior to the emergency surgery. Had there been no deviations from the standard of care, it is my opinion that emergency surgery could have been performed in a timely manner, and since McCuistion Hospital should have under the appropriate Joint Commission on Hospital Accreditation Standards, had its emergency surgery crew in place within thirty minutes, surgery could have been performed as soon as Charles Parrish arrived at McCuistion Regional Medical Center.

We must indulge all inferences from summary judgment evidence in favor of the nonmovant. *Nixon v. Mr. Property Management*, 690 S.W.2d at 548–49. Following this standard, we find that Dr. Morrell's statement provides more than speculation regarding a causal connection between the alleged negligence and Charles Parrish's death. Although Dr. Morrell's opinion is not stated in terms of "reasonable medical probability," the substance of the affidavit addresses the issue of proximate cause. *Insurance Company of North America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966); *Hughett v. Dwyre*, 624 S.W.2d 401, 408 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.).

The Parrishes also generally contend that the trial court erred in granting summary judgment because there exist genuine issues of material fact. One of the fact issues cited by the Parrishes is whether Drs. Brooks and Warren consulted with each other at Red River General Hospital. Dr. Morrell's affidavit alleges that Dr. Brooks failed to adequately communicate with Dr. Warren and apprise him of the diagnosis of internal injuries. Dr. Morrell's affidavit also alleges that Dr. Brooks was negligent in failing to record the results of his examination and diagnosis on the patient's chart. Dr. Brooks stated in his deposition that he either did not recall or did not have any conversation with Dr. Warren during the time he treated Charles Parrish. Dr. Warren stated in his deposition that he communicated with Dr. Brooks and was made aware of possible internal injuries. Dr. Nardone of McCuistion Regional Medical Center stated in an affidavit that he asked whether there was any chest, abdominal or vascular injury and was told there was none. This conflicting evidence raises fact issues that should not be decided on affidavits or by summary judgment. *Hobbs v. Hutson*, 733 S.W.2d 269, 272 (Tex. App.—Texarkana 1987, writ denied), *citing Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952).

As the summary judgment evidence raises genuine issues of material fact, summary judgment for Dr. Brooks was improper.

## V.

Because the Parrishes' causes of action against Red River are barred, summary judgment for Red River was proper.

Genuine issues of material fact exist as to the Parrishes' causes of action against Dr. Brooks. Summary judgment on those claims was not proper.

The summary judgment in Red River's favor is affirmed. The summary judgment in Dr. Brooks' favor is reversed. The causes of action against him are severed and remanded to the trial court for trial.

BLEIL, Justice, concurring.

Although I agree with the majority's decision in this case, I write separately to address the Parrishes' contention that Dr. Brooks' affidavit was not a basis for summary judgment because he did not specify the approved standard of care for a doctor. They specifically rely on this court's opinion in *Hammonds v. Thomas*, 770 S.W.2d 1

(Tex.App.—Texarkana 1989, no writ). And, they generally cite *Coan v. Winters*, 646 S.W.2d 655 (Tex.App.—Forth Worth 1983, writ ref'd n.r.e.), and *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213 (Tex. App.—Corpus Christi 1986, no writ).

Reliance on *Hammonds* for this assertion is misplaced. The language in *Hammonds* relied on was dicta, voiced by only one justice on this court. *See Hammonds v. Thomas*, 770 S.W.2d at 3 (Bleil, J., concurring), 770 S.W.2d at 4 (Grant, J., concurring).

I agree that the Brooks affidavit set out specific details. I further believe that the affidavit was otherwise proper summary judgment evidence. Medical doctors are free to express their opinions that there were no acts of medical negligence committed. *King v. Bauer*, 688 S.W.2d 845 (Tex. 1985). The notion that medical experts should testify only as to the standard of care, with the ultimate question of negligence being left to the jury, is no longer valid. Medical experts are allowed to express their opinions so long as the opinions are confined to relevant issues and are based on proper legal concepts. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987); Tex.R.Civ.Evid. 702, 704.