Wendy WESELA, Appellant,

v.

The UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellee.

No. A14–93–01054–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 6, 1995.

Jack D. Ewing, Jr., League City, for appellant.

Anne L. Morgan, Austin, for appellee.

Before ANDERSON, HUDSON and SEARS,* JJ.

* The Honorable Ross A. Sears sitting by assignment.

## OPINION

SEARS, Justice (Assigned).

This is an appeal from a summary judgment in favor of appellee, the University of Texas Medical Branch at Galveston (UTMB). Appellant asserts two points of error alleging that the trial court erred in granting summary judgment because appellee had actual notice of appellant's claims, or alternatively, because a fact issue exists as to whether appellee had actual notice of appellant's claims in order to satisfy the notice of claim requirements of the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101 (Vernon 1986). We affirm the judgment of the trial court.

On December 10, 1987, UTMB doctors performed a suboccipital crainectomy on appellant to remove a brain tumor. Postoperative progress notes indicate that appellant advised her physical therapist she was experiencing numbness to the left side of her face. Other medical records show that appellant was experiencing a corneal abrasion to her eye when she returned from surgery. On March 22, 1988, UTMB doctors performed a second operation on appellant because of a reoccurrence of the tumor.

On October 24, 1989, appellant sent a letter to UTMB stating that she wished to pursue a claim for damage to her left third and fourth cranial nerves and severe damage to her cornea resulting from the December 10, 1987, operation. Appellant did not file suit for damages allegedly resulting from the first operation until February 5, 1990. On May 12, 1993, appellant filed a second amended petition adding a claim that UTMB's negligence during the second surgery damaged appellant's fourth, fifth and sixth cranial nerves and caused her to suffer numbness of the left side of her face and diplopia. UTMB moved for summary judgment contending appellant failed to comply with the Texas Tort Claims Act's notice of claim requirements. TEX.CIV.PRAC. & REM. CODE ANN. § 101.101 (Vernon 1986). The trial court granted summary judgment for UTMB.

 UTMB, a government entity, enjoys sovereign immunity and cannot be sued for damages, except in specific circumstances outlined in the Texas Tort Claims Act. Section 101.101 of the Act provides that a person injured by a governmental entity must give notice of a claim not later than six months after the date of the incident giving rise to the claim. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1986). The notice must reasonably describe the damage or injury claimed, the time and place of the incident, and the incident itself. *Id.* However, the notice requirements do not apply if the governmental unit has actual notice of negligence that results in injury to the claimant. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986).

 In two points of error, appellant alleges that the trial court improperly granted summary judgment because UTMB had actual notice of her claims as a matter of law, and alternatively, that a fact issue exists as to whether UTMB had actual notice. We discuss both points of error together. In reviewing a summary judgment in favor of the defendant, we determine if the defendant has presented sufficient summary judgment evidence to establish that there is no genuine fact issue and that he is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In making this determination in normal summary judgments, we take all evidence favorable to the non-movant as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in favor of the non-movant. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). However, because appellant failed to comply with the statutory notice requirements, she must present some proof of negligence and resulting injury.

The undisputed facts show that appellant did not send notice of her claim for the December 10, 1987, surgery until October 24, 1989, almost two years after the first surgery, and did not give notice of her claim for the March 22, 1988, surgery until May 12, 1993, over five years after the second surgery. Because appellant failed to send notice of her claim within six months as required by the Texas Tort Claims Act, her suit is barred unless UTMB had actual notice

of appellant's claim. Tex.Civ.Prac. & Rem. Code Ann. § 101.101(a, c) (Vernon 1986).

Actual notice is normally a question of fact, which if disputed will preclude summary judgment. *See City of San Antonio v. Schautteet,* 706 S.W.2d 103, 105 (Tex.1986) (per curiam); *Alvarado v. City of Lubbock,* 685 S.W.2d 646, 649 (Tex.1985). However, UTMB is entitled to summary judgment if it provides the trial court with proof it did not have actual notice, and there are no genuine issues of material fact concerning actual notice. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). As summary judgment proof, UTMB presented an affidavit of Linda Vanwyk, its claim administrator, stating that appellee had no actual notice until appellant sent the letter in October 1989.

Appellant alleges UTMB's negligence caused the following injuries: (1) facial numbness, (2) blurred vision, (3) corneal scratch, (4) severed cranial nerve, and, (5) diplopia. Appellant offered the progress reports following the first surgery and the deposition testimony of Dr. Eisenberg, the former Chief of Neurosurgery at UTMB, as summary judgment proof of actual notice of negligence.[1] The progress reports did indicate that appellant complained of some facial numbness, blurred vision and a scratched cornea following the surgery. Dr. Eisenberg testified that sacrificing a nerve during the surgery was "unusual." However, he testified that due to shifting of a tumor, and difficulty in reaching a tumor for removal, the fact that a nerve was sacrificed "did not imply negligence." The reports show that the tumor was in a very difficult position and the fourth cranial nerve was not healthy prior to the surgery. There is nothing to suggest damage to any other nerve. The doctor also testified that numbness was not uncommon following surgery to remove a brain tumor. As to the scratched cornea, it may have been caused by employees or agents of UTMB, by the bed covers or surgical drapes,

or by the appellant in rubbing her eyes to improve the blurred vision. However, there is nothing in the summary judgment proof to suggest it was caused by the negligence of a doctor, nurse or technician of UTMB. Also, we note that appellant suffered from diplopia and impaired vision *prior* to the surgery. Accordingly, we hold that the occurrence of known side effects or known potential complications of brain surgery cannot rise to "actual notice" of negligence. In fact, according to the progress reports, the operation was considered a success.

Appellant relies on *Alvarado v. City of Lubbock,* 685 S.W.2d 646, 648–649 (Tex.1985) to show that a fact issue exists as to whether UTMB had actual notice of her claim. In *Alvarado,* the city was potentially liable for posting a sign with an incorrect speed limit unless the city could show that it did not have notice of the error. They posted a 55 MPH sign in a 50 MPH zone. The party opposing the city's summary judgment presented several city traffic citations and police accident reports explicitly noting the difference between the posted speed limits on either side of the highway. The police reports in *Alvarado* "explicitly noted the difference between the posted speed limits" and were direct evidence of the city's actual knowledge of the improper sign. The Supreme Court concluded that this evidence raised a fact issue as to whether the city had actual notice of the defective sign. The present case is distinguishable from *Alvarado* for two basic reasons: 1) Section 14(12) exempts from the Texas Tort Claims Act those claims that arise from traffic signs unless defects are not corrected *after* notice of defect; 2) six of the Alvarado plaintiffs were minors and were exempt from the Section 16 notice requirements.

The purpose of the notice statute in the Tort Claims Act is to enable a governmental unit to investigate negligence allegations while facts are fresh and conditions are sub-

---

1. UTMB contends appellant failed to provide any proper summary judgment evidence in her response to UTMB's motion for summary judgment because the documents attached to her response were not authenticated. Because appellant filed her response to summary judgment after September 1, 1990, she was not required to include a copy of the court reporter's certificate or an original affidavit by her attorney certifying the accuracy of the copied excerpts. *McConathy v. McConathy,* 869 S.W.2d 341 (Tex.1994) (per curiam). Therefore, the deposition excerpts can be received as summary judgment proof.

stantially similar so the governmental unit may timely guard against unfounded claims, settle claims, and prepare for trial. *Parrish v. Brooks*, 856 S.W.2d 522, 525–526 (Tex. App.—Texarkana 1993, writ denied). Although the notes following the surgery indicate some *known* and not uncommon side effects from the surgery, and the "unusual" but not negligent severing of a nerve, and pre-existing conditions, they do not constitute "actual notice" that negligence occurred which resulted in injury to the appellant. Even if an injury occurred, without summary judgment proof of *negligence*, the summary judgment in favor of UTMB was proper. *See Parrish*, 856 S.W.2d at 522.

We hold that appellant failed to comply with the notice requirements of the Texas Tort Claims Act and failed to present summary judgment proof of *actual* notice. The trial court did not err.

We overrule appellant's points of error and we affirm the judgment of the trial court.

ANDERSON, Justice (concurring).

I concur with the majority opinion but write separately in order to articulate why I believe UTMB did not have "actual notice" of an injury to Wesela as required by TEX.CIV. PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986).

The only issue to be decided in this case is whether or not Wesela raised a fact issue. The fact issue is: did UTMB have "actual notice that ... the claimant [Wesela] had received some injury...." Actual notice means the governmental entity must receive the same knowledge that it would have received if the Plaintiff had complied with the formal notice requirement. *Collier v. City of Texas City*, 598 S.W.2d 356, 358 (Tex.App.— Houston [14th Dist.] 1980, no writ). This

equates to a reasonable description of (1) the damage or injury claimed, (2) the time and place of the incident, and (3) the incident itself. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1986). In other words, to raise a fact issue, Wesela had to present summary judgment evidence establishing UTMB had information in its possession which *put it on notice* that (1) an injury had occurred to Wesela, (2) when and where the injury occurred, and (3) how the injury occurred.

UTMB's summary judgment proof conclusively demonstrates such information was not in its possession; ergo, UTMB did not have actual notice. What the evidence does show is that the tumor was in a very difficult position, and may have shifted or obscured the fourth cranial nerve. Although Dr. Eisenberg testified that sacrificing the nerve during surgery was "unusual," he conceded that due to difficulty in reaching the tumor, cutting the nerve was not an unacceptable choice. Thus, UTMB's staff, reviewing the medical records, would not be put on notice that an injury occurred to Wesela's fourth cranial nerve on December 10, 1987, during the course of the surgery. What they would see are records indicating the sacrifice of a nerve probably in order to reach an otherwise inaccessible tumor.[1] This is not enough to alert UTMB to possible liability so that they could begin an immediate investigation while the events were still reasonably fresh in the minds of the staff and persons concerned. To require the hospital staff to "speculate," or otherwise "guess" that sacrificing the nerve was unnecessary, and thus an "injury," would unduly burden public providers. There simply is not enough evidence to raise a fact issue suggesting UTMB had actual notice that the damage to Wesela's fourth cranial nerve fell outside the normal

---

1. The relevant medical record read:
 The fourth nerve was sacrificed on that side, knowing that the patient had diplopia [double vision], moderately severe prior to operation and that the diplopia and brain stem origin probably would not resolve. Because of the mass in the mid brain and medulla, the fourth nerve was tented upwards and stretched in a fashion that it made it almost impossible to open the margin of the tentorium without sacrificing the fourth cranial nerve.

 In his deposition, Dr. Eisenberg stated sacrificing the fourth cranial nerve "can happen." He then clarified that statement:
 ... one would do whatever they could to identify and protect the fourth nerve. For some reason, it was difficult to identify. It may be that the tumor was so rotated that it obscured the fourth nerve. That, I can't remember....

parameters for the surgical procedure performed—the removal of a brain tumor.