OPINION

No. 04-06-00025-CV

Ricardo MONCADA and Texas Department of Criminal Justice ,

Appellants

v.

Scott A. BROWN, Guillermo Martinez, Gabriel Gaytan, and Gilberto Martinez ,

Appellees

From the 229th Judicial District Court, Duval County, Texas

Trial Court Nos. DC-02-74; DC-03-249 & DC-02-28

Honorable Alex W. Gabert , Judge Presiding




Opinion by: Alma L. López, Chief Justice



Sitting: Alma L. López, Chief Justice

 Karen Angelini , Justice

 Phylis J. Speedlin , Justice



Delivered and Filed: June 28, 2006



REVERSED AND RENDERED

 Ricardo Moncada and the Texas Department of Criminal Justice appeal the trial court's order denying their motion for
summary judgment that was based on an assertion of immunity. Moncada claims that the trial court erred in denying his
motion because he is entitled to immunity under section 497.096 of the Texas Government Code and to official immunity. 
TDCJ asserts that because Moncada is immune, it is immune. The appellees counter that this court does not have
jurisdiction to consider the appeal because: (1) the appeal is from an order granting their motion for new trial; or,
alternatively; (2) the court can only consider the appeal of the official immunity contention, not the assertion that Moncada
is immune under section 497.096. Finally, the appellees contend that Moncada failed to establish entitlement to official
immunity. We reverse the trial court's order and render judgment dismissing the underlying lawsuits based on our
determination that Moncada and TDCJ are immune from suit.

Background


 The appellees are prison inmates. Moncada was ordered to take the inmates to a field to trim trees and clean brush. 
Moncada chose to use a field truck with an attached flatbed trailer to transport the inmates and equipment to the field. The
equipment was placed in the bed of the truck, and the inmates rode on the trailer.

 When Moncada and the inmates arrived at the field, Moncada discovered he had left one of the inmates behind. Moncada
ordered the inmates back on to the trailer and was driving back across the field when he hit a bump or pot hole, causing the
trailer to unhitch. When the trailer unhitched, the inmates fell from the trailer and were injured. 

 The appellees, four of the inmates, sued Moncada and TDCJ alleging negligence and gross negligence. Moncada and
TDCJ moved for summary judgment on the basis of official immunity and immunity under section 497.096. After a
hearing, the trial court granted the motion for summary judgment. The appellees filed a motion for new trial. After another
hearing, the trial court entered an order granting the motion for new trial that states:

 It is hereby ORDERED that Plaintiff's Motion for New Trial is GRANTED. It is further ORDERED that Defendants
Moncada and Texas Department of Criminal Justice's Motion For Summary Judgment is hereby DENIED.



Jurisdiction


 The appellees initially assert that this court does not have jurisdiction to consider this appeal because Moncada and TDCJ
are appealing the trial court's order granting the appellees' motion for new trial. We disagree.

 A trial court's order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual
who is an officer or employee of the state or a political subdivision of the state" is an appealable order. Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2005). In this case, the trial court's order first granted the motion for new
trial and then denied the motion for summary judgment.

 Although the trial court's order granting the new trial set aside the first order granting the motion for summary judgment,
this did not prevent the trial court from rendering a new judgment. P.V. Int'l Corp. v. Turner, Mason, and Solomon, 700
S.W.2d 21, 22-23 (Tex. App.--Dallas 1985),writ denied, 778 S.W.2d 865 (Tex. 1989). Furthermore, nothing prevented the
trial court from rendering the new judgment in the same order in which it granted the new trial. (1)

 See City of Bryan v. City of College Station, No. 14-96-01554-CV, 1998 WL 285996, at *5 (Tex. App.--Houston [14th
Dist.] June 4, 1998, pet. denied).

 In this case, the order has the effect of denying the motion for summary judgment based on an assertion of immunity. 
Accordingly, the order is appealable under section 51.014(a)(5). The conclusion that the order is appealable is consistent
with the Texas Supreme Court's instruction that the decisions of the courts of appeals should turn on substance rather than
procedural technicality. Mueller v. Saravia, 826 S.W.2d 608, 609 (Tex. 1992); see also Thomas v. Long, No. 03-0204, 2006
WL 1043429, at *4 (Tex. Apr. 21, 2006) (finding jurisdiction where trial court's order implicitly rejected a jurisdictional
challenge).

 The appellees also argue that the only portion of the order that is appealable is the portion relating to the assertion of
official immunity. The appellees contend that an assertion that an employee is not liable for damages based on section
497.096 is not an assertion of immunity.

 Section 497.096 provides:

 An employee of the Texas Department of Criminal Justice ... is not liable for damages arising from an act or failure to act
in connection with community service performed by an inmate imprisoned in a facility operated by the department or in
connection with an inmate or offender programmatic or nonprogrammatic activity, including work, community service,
educational, and treatment activities, if the act or failure to act was not intentionally, wilfully or wantonly negligent, or
performed with conscious indifference or reckless disregard for the safety of others.



Tex. Gov't Code Ann. § 497.096 (Vernon 2004) (emphasis added). Similarly, in speaking of when immunity is waived, the
Texas Tort Claims Act states the conduct for which the state "is liable." Tex. Civ. Prac. & Rem. Code Ann. § 101.021
(Vernon 2005). The use of the phrase "is not liable for" has the same meaning as stating that the employees are immune
unless the exception applies.

 The few cases that have discussed section 497.096 also refer to the section in terms of immunity. In Cobb v. Tex. Dept. of
Crim. Justice, the court stated that the defendants, who were two TDCJ employees, were "immune under section 497.096
only if they can prove they did not act with intentional, willful, or wanton negligence or reckless disregard for the plaintiff's
safety." 965 S.W.2d 59 (Tex. App.--Houston [1st Dist.] 1998, no pet.) (emphasis added); see also Gill v. Texas Dept. of
Crim. Justice, 3 S.W.3d 576, 581-82 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (same).

 In City of Lubbock v. Land, the court considered a statutory provision with language similar to section 497.096 in that the
statute sets forth when employees of political subdivisions "are not liable for damages." (2) 33 S.W.3d 357, 358 (Tex.
App.--Amarillo 2000, no pet.). The court referred to the statutory provisions as "immunity provisions" and rejected an
argument that overlooked that the statutory provision "afford[ed] immunity to officers and employees." Id. at 359. 
Although article 42.20 of the Texas Code of Criminal Procedure is labeled "Immunities," the phrase "are not liable for
damages" is the key language used to establish the immunity.

 Accordingly, we hold that an assertion of the absence of liability pursuant to section 497.096 is an assertion of immunity
for purposes of section 51.014(a)(5).

Standard of Review


 Moncada and TDCJ moved for summary judgment on both traditional and no evidence grounds based on their assertions of
immunity - an affirmative defense. Because Moncada and TDCJ have the burden of proof with regard to their affirmative
defenses, a no-evidence motion for summary judgment is not proper; therefore, we only consider whether the trial court
erred in denying the motion under traditional summary judgment grounds. See Chaney v. Corona, 103 S.W.3d 608, 610
(Tex. App.--San Antonio 2003, pet. denied). "When reviewing a summary judgment, we follow these well-established
rules: (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts must be resolved in favor of the nonmovant." Id. (quotingAmerican Tobacco Co. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997)). 

 "Summary judgment is proper if the defendant establishes all elements of an affirmative defense to each claim." Id. "Once
a movant establishes its right to summary judgment on the basis of an affirmative defense, the nonmovant must respond
with reasons for avoiding summary judgment and must support those reasons with proof sufficient to raise a fact issue." Id.
(quoting Deaver v. Bridges, 47 S.W.3d 549, 551 (Tex. App.--San Antonio 2000, no pet.)).

Section 497.096


 Section 497.096 provides:

 An employee of the Texas Department of Criminal Justice ... is not liable for damages arising from an act or failure to act
in connection with community service performed by an inmate imprisoned in a facility operated by the department or in
connection with an inmate or offender programmatic or non programmatic activity, including work, community service,
educational, and treatment activities, if the act or failure to act was not intentionally, wilfully or wantonly negligent, or
performed with conscious indifference or reckless disregard for the safety of others.



Tex. Gov't Code Ann. § 497.096 (Vernon 2004). Moncada contends that section 497.096 makes him immune from liability
if his acts were not "intentionally, wilfully or wantonly negligent, or performed with conscious indifference or reckless
disregard for the safety of others." Id. 

 In Cobb v. Tex. Dept. of Crim. Justice, an inmate slipped and fell while working in a butcher shop in the prison. 965
S.W.2d at 61. In addressing liability under section 497.096, the court noted that the TDCJ employees would be immune if
they could prove they did not act with intentional, willful, or wanton negligence or reckless disregard for the plaintiff's
safety. Id. at 63. In that case, evidence was presented that the TDCJ employees "admitted they knew the floor was a work
hazard, but did not think it so serious as to warrant preventing the inmates from working on it." Id. Based on that evidence,
the court concluded that there was a fact issue as to whether the TDCJ employees were grossly negligent and held summary
judgment based on section 497.096 was improper. Id.

 In Gill v. Tex. Dept. of Crim. Justice, an inmate sued the TDCJ for injuries he sustained while loading tree stumps onto a
truck owned by the TDCJ. 3 S.W.3d at 578. The inmate asserted that a TDCJ employee was negligent in the performance
of his responsibilities as supervisor. Id. TDCJ asserted immunity under section 497.096 because its employee was not
liable. Id. at 581. On appeal, the court noted that the employee would be immune under section 497.096 if he did not act
with intentional, willful, or wanton negligence or reckless disregard for the plaintiff's safety. Id. at 581-82. Because the
inmate did not allege that the employee's acts or omissions rose to the level of gross negligence, the court affirmed the trial
court's summary judgment based on immunity. Id. at 582.

 The incident report in the instant case described the events leading to the unhitching explaining that Moncada "hit a bump
or hole in the field, which caused the trailer to become unhitched from the pickup. The trailer hitch hit the ground and the
trailer came to a sudden stop and threw seven offenders to the ground." Moncada reported that "he hitched up the trailer,
locked it down, and checked to make sure it was secure." Several of the inmates who were questioned stated that they "had
observed Moncada lock and secure the trailer to the hitch of the pickup prior to leaving and were [sic] did not know how it
came undone, only that they hit a bump right before it came unhitched." After this incident, the TDCJ policy was changed
to no longer allow inmates to ride on trailers or in the beds of trucks.

 Attached to the incident report were the statements taken from the various inmates. They all describe hitting a bump that
caused the trailer to unhitch. Scott Brown stated that when they hit the bump and the trailer came unhitched "we were not
going fast." Brown further stated, "I don't know why the trailer came undone. I think it was just one of those things that
happens." Guillermo Martinez also reported, "Mr. Moncada was not driving fast or anything it just hit a big rut in the
ground. ... it was just an [sic] freak accident that was not preventable. Accidents happen." 

 In Moncada's affidavit, he stated that he was ordered to take a field squad of prison inmates to trim trees and clear brush. 
He chose to use a truck and trailer for transportation from among the various ways he could transport the inmates. "I double
checked the trailer hitch visually and found that the handle was locked down, then I physically pulled up on the trailer using
my entire weight to see if it was secure." Moncada stated that there was no recognizable road to the job site so he chose a
route along a small road until he had to proceed through the field. "The job site was in a remote area of the property
without road or trail access." When he noticed an inmate had been left behind, he ordered everything to be re-loaded and
proceeded to return to the unit, "attempting to follow the previous route. After we had travelled [sic] approximately 30
yards, the truck hit a bump or pothole in the field. Due to the grass in the field I did not see the bump or pothole before the
truck hit it. I immediately looked in my rearview mirror and found that the trailer had become unhitched." In asserting that
he acted in good faith, Moncada stated:

 My testing showed the hitch to be secure and I was not subjectively aware of the hole or bump in the field that caused the
accident. I was not aware of major holes and ruts in that area of the fields that would cause such an accident. I am aware of
no prior serious injuries involving motor vehicles striking holes or ruts in these fields. I am aware of no prior incidents
where a trailer hitch had separated from the vehicle that was towing it. I did not know nor was I substantially certain that an
accident would occur.



 Moncada's deposition is consistent with his affidavit. Moncada stated that trailers were routinely used to transport inmates
to job sites. Moncada stated that he backed the truck, the inmates hooked up the trailer, and Moncada double-checked it by
picking up the hitch with both hands. Moncada stated that one inmate, Brown, had told him it "wasn't going on right," but
he double-checked the trailer and it "was on." Moncada stated that he attempted to return along the same path he had taken
and that the grass along the return path was the same as that along the path taken to the site. Moncada stated that there was
no reason to rush back for the inmate that was left behind because he was still in a secure area.

 Sergeant Soliz's affidavit also stated that there were a variety of ways to transport inmates according to TDCJ policy. Soliz
stated that it was "common practice to transport inmates on towed trailers, specifically the field truck and the trailer
involved in this incident." Soliz was unaware of any serious injuries that occurred from this practice prior to the incident in
question and was unaware of major holes or ruts in the area the work was to be performed. Soliz was unaware of any prior
serious injuries resulting from a vehicle striking holes or ruts in the fields or of an incident where a trailer hitch had
separated from the vehicle that was towing it. Soliz stated that he believed the method of transportation was justified and
reasonable and would not expect such an accident to occur. In his deposition, Warden Bryan Vandagriff also stated that
transporting inmates in trailers was a common practice.

 Appellee Gabriel Gaytan had only worked under Moncada a short time but had ridden in the trailer on three prior
occasions. Gaytan stated that Moncada always drove slowly. Gaytan stated that the grass in the area in which the incident
occurred was taller than other areas. Gaytan thought that Moncada was returning for the inmate because he could get in
trouble for leaving him behind. Gaytan stated that the speed at which Moncada traveled returning from the field was faster
than the speed that was driven in arriving at the field. Gaytan stated that the path taken to the field was different than the
path taken in returning from the field and Moncada was cutting across the field to return. Gaytan stated that the path was
bumpy but no bump was as noticeable as the one that caused the incident. Gaytan stated that when Moncada was told that
he left an inmate behind, he was scared and angry "like if he had seen a ghost." Gaytan stated that Moncada caused the
accident by driving too fast in the middle of the field.

 Appellee Scott Brown stated that he was one of the inmates attempting to hitch the trailer but "it wasn't right" and they
"couldn't get it to fit." Brown stated that it felt like the trailer would not go on the trailer ball. Brown told Moncada that
"there was something wrong, you know, that it is not hitching." Brown stated that Moncada is a muscular man, and he
"lifted it up, slammed it down, and he - hitched it. I don't know if he hitched it right." Brown saw Moncada put the locking
mechanism down after he hitched the trailer. Brown did not recall previously riding in a trailer pulled by the truck used on
that occasion. Brown stated that Moncada was afraid he would get in trouble for leaving the inmate behind. Brown stated
that Moncada was driving a lot faster than his usual speed in returning from the field. Brown further stated that Moncada
was driving across the field instead of following the track. Brown later stated that driving across the field could have been
done safely at the proper speed.

 Appellee Guillermo Martinez testified that being pulled in the trailer was a common occurrence. Guillermo testified that
he was not present when the trailer was hitched, but Moncada had been told in the past about problems with the trailer
hitch. Guillermo testified:

 We had already told him before that. Because the trailer had one ball size, it was one hitch size, and a lot of the trucks and
the trailers and tractors and Mules (3) that we pulled were a different ball size. We had already told him before that it didn't -
it wasn't - in our opinion, it didn't match. But, I mean, you know, what do we know, you know.



Guillermo later clarified that although he had a concern about the way the trailer fit on the Mule's hitch, he did not have the
same concern about the truck:

 Q. And if I understood you earlier, you don't remember ever expressing specific concern about the way the hitch fit the two
T.D.C.J. trucks they would use, right?

 A. Yeah, because I figured it should have fit, you know. It's bigger, you know, a bigger truck. They had bigger balls on
them.

 Q. There was no previous occasion that made you think maybe these things do not fit?

 A. No. No, sir.



Guillermo stated that Moncada was driving pretty fast because he always drove that way. Guillermo stated that Moncada
had a habit of sliding or slamming his brakes. Guillermo testified that Moncada was upset when he discovered the inmate
had been left behind and ordered the inmates back on to the trailer. Guillermo stated that Moncada cut through the field and
was driving faster because he was mad. Guillermo stated that the trailer came unhitched when the truck went through a dip.

 Appellee Gilberto Martinez testified that Moncada generally drove along trails when they were being pulled in the trailer. 
Gilberto stated that while they were hitching the trailer, Brown noticed a problem and told Moncada. Gilberto stated that
the hitch "gave a lot" when Brown shook it. When they arrived at the site and Moncada discovered one of the inmates was
left behind, they re-loaded the trailer. Moncada was driving through tall grass rather than staying on the trails he had driven
on to arrive at the job site. Moncada seemed to be driving faster and was worried about leaving the inmate behind.

 The question becomes whether the foregoing evidence conclusively established that Moncada's actions were not
"intentionally, wilfully, or wantonly negligent, or performed with conscious indifference or reckless disregard for the safety
of others." Recklessness requires a subjective awareness of, and indifference to, the risk posed by the defendant's conduct. 
Sterling Trust Co. v. Adderley, 168 S.W.3d 835, 841 (Tex. 2005). Not only must the actor have actually known of the peril
but also his acts or omissions must demonstrate subjectively that he did not care about it. Diamond Shamrock Refining Co.
v. Hall, 168 S.W.3d 164, 173 (Tex. 2005); Agrium U.S., Inc. v. Clark, 179 S.W.3d 765, 767 (Tex. App.--Amarillo 2005,
pet. denied). An actor's failure to pursue the safest course available does not necessarily equate to a want of caring. Agrium
U.S., Inc., 179 S.W.3d at 767.

 Although the appellees stated that they believed Moncada was driving faster on the return trip and cut across the field
because he could get in trouble for leaving an inmate behind, this evidence does not establish that Moncada was
subjectively aware of and indifferent to any risk posed by his driving or was "intentionally, wilfully, or wantonly negligent."
Moncada testified that he double-checked the hitch before transporting the appellees. The trailer was typically used to
transport inmates, and the trailer had never unhitched prior to the incident in question. Moncada was unaware that the
location in which he was driving had holes or ditches that would make it unsafe, and the bump that caused the unhitching
was extraordinary. Accordingly, Moncada conclusively established his immunity under section 497.086. As a result, we do
not address whether Moncada also was entitled to official immunity. Because Moncada is immune, TDCJ is immune. (4) 
See DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995); City of Laredo v. Nuno, 94 S.W.3d 786, 789 (Tex.
App.--San Antonio 2002, no pet.). 

Conclusion


 The trial court's order is reversed, and judgment is rendered that the underlying lawsuits are dismissed for lack of
jurisdiction because Moncada and TDCJ are immune from suit.



 Alma L. López, Chief Justice





1. In Parrish v. Brooks, Brooks moved for summary judgment which was granted. 856 S.W.2d 522, 526 (Tex.
App.--Texarkana 1993, writ denied). Thereafter, the trial judge vacated his order and granted a new trial. Id. at 526-27.
Brooks filed supplemental motions which failed to assert a limitations defense raised in the original motion. Id. at 527. In
determining that the limitations defense raised in the original motion continued to be a viable ground for summary
judgment, the Texarkana court concluded that the order vacating the order granting summary judgment and granting a new
trial did not amount to a denial of the motion for summary judgment but only left the motion pending. Id. Parrishis
somewhat confusing because in a previous description of the order, the court stated that the trial judge, "vacated his order
granting summary judgment to Dr. Brooks, denied summary judgment, and granted a new trial." Id. at 526-27. In any event,
Parrish can be distinguished from the instant case based on the order in which the events occurred. In the instant case, the
order grants the new trial before it denies the summary judgment.

2. Article 42.20(a) provides: 

 An individual listed in Subsection (c) of this article and the governmental entity that the individual serves as an officer or
employee are not liable for damages arising from an act or failure to act by the individual or governmental entity in
connection with a community service program or work program established under this chapter or in connection with an
inmate, offender, or releasee programmatic or nonprogrammatic activity, including work, educational, and treatment
activities, if the act or failure to act: (1) was performed pursuant to a court order or was otherwise performed in an official
capacity; and (2) was not performed with conscious indifference for the safety of others. 

Tex. Code Crim. Proc. art. 42.20 (Vernon Supp. 2005).

3. A "Mule" is a term used to distinguish another type of vehicle from the truck used on the occasion in question.

4. In a footnote, the appellees contend that the motion for summary judgment failed to address their non-respondeat superior
claims such as negligent hiring and negligent supervision. TDCJ did, however, refer to these claims in a footnote to its
motion, stating that no immunity exists for such claims, and the law supports TDCJ's position. See Tex. Dept. of Public
Safety v. Petta, 44 S.W.3d 575, 580-81 (Tex. 2001); Los Fresnos Consol. Ind. Sch. Dist. v. Rivas, No. 13-04-168-CV, 2005
WL 1981494, at *6 (Tex. App.--Corpus Christi Aug. 18, 2005, pet. denied); Durbin v. City of Winnsboro, 135 S.W.3d 317,
325 (Tex. App.--Texarkana 2004, pet. denied); see also City of San Antonio v. Parra, 185 S.W.3d 61, 64 (Tex. App.--San
Antonio 2005, no pet.).