# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0431

═══════════

TARRANT COUNTY, TEXAS, PETITIONER,

v.

RODERICK LYDELL BONNER, RESPONDENT

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

══════════════════════════════════════════

**Argued March 12, 2019**

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BROWN, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined.

JUSTICE BOYD filed an opinion concurring in the judgment only.

In this summary-judgment appeal, we consider the liability standard that applies to an inmate's suit for personal injury allegedly sustained during his incarceration in the county jail. The inmate's injury was allegedly caused by a defective chair that collapsed during the inmate's treatment for diabetes. At issue is the application of two statutes that generally protect governmental actors and entities from liability for their own negligence in connection with certain inmate activities, including the medical treatment in this case. *See* TEX. CODE CRIM. PROC. art. 42.20; TEX. GOV'T CODE § 497.096. In reversing the trial court's summary judgment, which was based on these statutes, the court of appeals concluded that the statutes' liability standard of conscious indifference

did not apply to some of the inmate's negligence claims. The court reasoned that the county's failure to dispose of the defective chair promptly or to warn of its defective condition were not failures "in connection with" the inmate's medical treatment and thus outside the statutes' scope. 568 S.W.3d 169, 173-74 (Tex. App.—Fort Worth 2018) (mem. op.). We disagree and conclude that the statutes apply to the inmate's claims. We further agree with the trial court that the inmate failed to raise a material fact issue under the statutes' heightened liability standard and accordingly reverse the court of appeals' judgment.

## I

Robert Barham, a detention officer at the Tarrant County jail, damaged the leg of a chair he used during his work at the jail. The damaged leg caused the chair to collapse and Barham to fall to the floor. Although uninjured, Barham promptly notified his supervisor about the accident. The supervisor instructed him to place the chair in the jail's multipurpose room for disposal and to fill out a report. The multipurpose room is a locked room in the jail used for storage and, as the name implies, other purposes. Barham knew the room was occasionally used by nurses who were brought to the jail to treat diabetic inmates.

The jail's population included a significant number of inmates with diabetes, including the plaintiff here, Roderick Bonner. Four days after Officer Barham's accident with the chair, Bonner went to the multipurpose room for a diabetes treatment. While there, Bonner attempted to use the damaged chair. It collapsed once again, pitching Bonner to the floor.

Bonner sued Tarrant County for injuries he allegedly suffered from the fall. Bonner's pleadings alleged the County was negligent in three respects: (1) failing to remove the broken chair

2

from the jail within a reasonable time, (2) failing to warn Bonner of the chair's unsafe condition, and (3) directing or allowing Bonner to use the broken chair during his medical treatment. Although the County is generally immune from suit and liability under common law principles of governmental immunity, Bonner's claims invoked the legislative waiver of that immunity under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2) (waiving immunity from liability for personal injury or death caused by a condition or use of personal property); *see also id.* § 101.025 (waiving immunity from suit for those claims).

The County's answer generally denied Bonner's allegations and affirmatively pled its immunity from liability under two similar statues, Texas Code of Criminal Procedure article 42.20 and Texas Government Code section 497.096. Later, the County filed a summary-judgment motion in which it argued that, despite the waiver of immunity under the Tort Claims Act, it retained immunity from liability for ordinary negligence claims under these two statutes. When applicable, these statutes impose a heightened standard of culpability for claims that arise from an act or omission connected with an inmate activity or program, like Bonner's diabetes treatment. *See* TEX. CODE CRIM. PROC. art. 42.20; TEX. GOV'T CODE § 497.096 (imposing conscious indifference or reckless disregard as the liability standard for inmate claims of injury in connection with inmate activities).

The trial court granted the County's summary-judgment motion. Bonner appealed, and the appellate court reversed the summary judgment. The court of appeals concluded that the statutory immunity did not apply to at least some of Bonner's claims. 568 S.W.3d at 173-74. The court reasoned that Officer Barham's placement of the damaged chair in the multipurpose room and his

failure to warn others about the chair's condition were not acts or failures to act in connection with Bonner's medical treatment and thus did not implicate the statutory immunities made the basis of the County's summary-judgment motion. *Id.*

## II

As relevant here, article 42.20 states that certain individuals and governmental entities are not liable for damages arising from action or inaction in connection with an inmate activity, including treatment activities, if the action or inaction was performed in an official capacity and was not performed with conscious indifference:

> An individual listed in Subsection (c) of this article and the governmental entity that the individual serves as an officer or employee are *not liable for damages arising from an act or failure to act* by the individual or governmental entity in connection with a community service program or work program established under this chapter or *in connection with an inmate, offender, or releasee programmatic or nonprogrammatic activity, including* work, educational, and *treatment activities, if* the act or failure to act:
>
> (1) was performed pursuant to a court order or was otherwise *performed in an official capacity; and*
>
> (2) was *not performed with conscious indifference* for the safety of others.

TEX. CRIM. PROC. CODE art. 42.20(a) (emphasis added). Employees of the sheriff's department and the county are among the individuals listed in Subsection (c). *Id.* § 42.20(c)(2)-(3).

Section 497.096 similarly provides that county and sheriff's department employees are not liable for damages arising from action or inaction in connection with an inmate or offender treatment activity if the action or inaction was not intentional, wilfully negligent or performed with conscious indifference or reckless disregard:

4

> *An employee* [of the sheriff's office or the county among others] . . . is *not liable for damages arising from an act or failure to act* in connection with community service performed by an inmate imprisoned in a facility operated by the department or *in connection with an inmate or offender programmatic or nonprogrammatic activity, including* work, community service, educational, and *treatment activities, if the act or failure to act was not intentional, wilfully or wantonly negligent, or performed with conscious indifference or reckless disregard* for the safety of others.

TEX. GOV'T CODE § 497.096 (emphasis added). In contrast to article 42.20, which explicitly applies to individuals and the governmental entities they serve, section 497.096 speaks only to individual immunity. This distinction is largely insignificant here because under the Texas Tort Claims Act a governmental entity cannot be liable for the actions or inactions of its employees if the employees are not liable for any reason, including their own immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021 (predicating governmental liability on employee's personal liability); *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 654 (Tex. 1995) (holding that county sued under the Tort Claims Act is entitled to assert any affirmative defense its employee has, such as an immunity).

The statutes thus provide immunity from liability to identified governmental individuals and entities for damages that arise from their negligent acts or omissions in connection with covered programs and activities. Bonner does not dispute that his lawsuit concerns a covered activity. Nor does he deny that his allegations of negligence involve individuals and entities named in these statutes. Rather, Bonner contends that the statutes do not apply because the requisite connection between his allegations and the covered activity does not exist. He specifically focuses on the County's alleged omissions—its failure to mark the chair as broken or remove it from the jail—arguing that the damaged chair was not in the multipurpose room as part of his medical

5

treatment but rather was there for another purpose. Bonner concludes that, as to these omissions,

the relevant connection does not exist, and the statutes do not apply.

Bonner's argument is similar to the court of appeals' analysis, which also focuses on these

omissions to conclude that the statutory immunity does not apply to Bonner's allegations because

their relationship to Bonner's treatment is not sufficiently direct or connected. Regarding article

42.20, the court writes:

> [A]lthough the nurse's treatment of Bonner could conceivably be categorized as a "treatment activity" as that term is used in the statute, Bonner did not allege an injury arising from *an act or failure to act* "in connection with" that treatment activity. . . . While Bonner's injury had a connection to treatment activity in that the reason he went into the room with the chair was to see the nurse, *Officer Barham's act* of placing the chair in the room had *no* relation to the nurse's eventual provision of treatment.

568 S.W.3d at 173 (emphasis in original). With respect to section 497.096 the court similarly notes:

> In this case, that act or failure to act involved the placement of the chair and the failure to warn of its condition, not Bonner's medical treatment. Officer Barham moved the chair because he knew it needed to be disposed of and he did not want others to sit in it. He therefore moved the chair from the officers' desk area and into the locked Multipurpose Room, which inmates could not access without an officer's permission. Barham's placing the chair in the Multipurpose Room, . . . and his supervisor's failure to warn others about the condition of the chair, were not in connection with an "inmate activity."

*Id*. at 174. The court of appeals thus reasons that the acts or failures about which Bonner complains

occurred four days before his accident, when Officer Barham placed the broken chair in the

multipurpose room without a warning. In the court's view, because that act was not done "in

connection with" the treatment activity that occurred in the room four days later, the statutes do not

apply.

6

# III

The County complains that the court's analysis erroneously narrows these immunity statutes by inferring the necessity of some temporal or teleological connection between the negligent act or omission and the medical treatment, as if the act or omission had to be contemporaneous with or performed for the purpose of affecting the medical treatment. The County submits that no such requirement exists in either statute. Instead, the statutes simply require some connection between the alleged act or failure to act and the relevant activity. *See ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 899-901 (Tex. 2017) (per curiam) (equating the phrase "in connection with" in the Texas Citizens Participation Act to "involving," "concerned," or "in the context of"). The County maintains that use of the phrase "in connection with" has been interpreted in other statutes to require only an incidental or tangential connection and should be similarly interpreted here.

Bonner responds that there must be some limit to the breadth of the acts or omissions encompassed by the phrase "in connection with." He proposes we equate the phrase to "in furtherance of" as the appropriate limiting principle and as a connection that actually matters. Bonner points to the United States Supreme Court's decision in *Chadbourne & Parke LLP v. Troice* for the proposition that "in connection with" means a "connection that matters." *See* 571 U.S. 377, 387 (2014).

In *Chadbourne*, the Court construed a provision of the Securities Litigation Uniform Standards Act of 1998 that forbids class actions based on state law "in which the plaintiffs allege 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'" *Id.* at 380 (quoting 15 U.S.C. § 78bb(f)(1)) (emphasis omitted). The Court held

7

that the scope of that quoted language did not "extend further than misrepresentations that are material to the purchase or sale of a covered security." *Id*. at 387. In reaching that conclusion, the Court explained: "The phrase 'material fact in connection with the purchase or sale' suggests a connection that matters." *Id*.

We do not read that case to support Bonner's argument. It was not the words "in connection with" that implied a "connection that matters"; it was the word "material" that preceded the phrase. *Id*. at 387-88. Because the statute hinged on an alleged misrepresentation or omission of a "material" fact, it necessarily meant that the "connection" between the misrepresentation or omission and the purchase or sale must have been "material" or one "that matters." *Id*. By contrast, the word "material" does not appear in article 42.20 or section 497.096.

Generally, the use of the phrase "in connection with" does not imply a material or significant connection although context may indicate otherwise. One authority has referred to the phrase as "a vague, loose connective." BRYAN GARNER, A DICTIONARY OF MODERN LEGAL USAGE 287 (1st ed. 1987). Another has described the phrase as one of "intentional breadth." *Titan Transp., LP v. Combs*, 433 S.W.3d 625, 637 (Tex. App.—Austin 2014, pet. denied). We have expressed a similar view. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (construing "in connection with" and "relates to" as effective synonyms in the context of the Texas Citizens Participation Act). We have also said in one case that it was error to construe the phrase as requiring more than a tangential, tenuous, or remote relationship between the connected items. *Coleman*, 512 S.W.3d at 900-901.

The County argues that a legitimate connection exists between its alleged acts and omissions and Bonner's medical treatment because Bonner would not have a claim for damages but for that connection. For example, the alleged omissions—the failure to remove the chair or warn of its condition—were legally insignificant until they intersected with Bonner's medical treatment. Had these omissions not continued through to the time of Bonner's treatment, Bonner would have no claim for damages. In short, the omissions only lead to the alleged damages because of their connection to the medical visit. Similarly, Bonner's negligence theory based on the continued use of the chair after its defective condition was known necessarily connects to the occasion of Bonner's medical encounter. Because Bonner's damages claim rests on the County's alleged negligent acts and omissions intersecting with his medical treatment, we agree that they are "in connection with" each other.

We also strive to harmonize the meaning and application of related statutes whenever possible. *Fort Worth Transp. Auth. v. Rodriguez,* 547 S.W.3d 830, 838 (Tex. 2018). The related law here is the Texas Tort Claims Act, which provides a limited waiver of the State's sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001-.109. Tarrant County, as a governmental entity and political subdivision of the state, is generally immune from suit and liability under common law principles. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). The Tort Claims Act provides a limited waiver of that immunity for certain claims. *See* TEX. CIV. PRAC. & REM. CODE § 101.025. ("Waiver of governmental immunity; permission to sue").

As relevant in this case, the Act waives the County's governmental immunity for personal injuries caused by a condition or use of tangible personal property, authorizing liability to the same

9

extent as though the County were a private person. *Id*. § 101.021(2). Bonner pled a negligence claim under the Act's waiver of immunity by alleging the condition or use of the damaged chair as the cause of his personal injury: its condition because the County failed to warn him about the chair's dangerous condition; its use because Bonner was directed or allowed to use the chair during his medical treatment.[1] Contrary to the court of appeals' analysis, Bonner does not assert that the County's act of storing the chair was a breach of any duty of care. But it would not matter even if Bonner raised that allegation. As the Attorney General[2] points out, a claim based on the storage of the damaged chair in the multipurpose room four days before Bonner's accident is not a claim for which governmental immunity is waived under the Tort Claims Act, which "is the only, albeit limited, avenue for common-law recovery against the government." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

Bonner does not contend that no connection exists between the chair's use and his medical treatment, nor does the court of appeals' opinion disclaim the existence of a connection to that allegation. Rather, they both focus on the County's alleged failure to act—its failure to warn about the chair or remove it from the jail. *See* 568 S.W.3d at 173 ("While Bonner's injury had a connection to treatment activity . . . *Officer Barham's act* of placing the chair in the room had *no* relation to the nurse's eventual provision of treatment.") (emphasis in original). The analysis

---

[1] Bonner also alleges the County was negligent in failing to remove the chair from the jail. This alleged omission is simply the flip-side of the use allegation and implicates the same duty. If the County had removed the chair from the jail, it would not have been available for use in connection with Bonner's medical treatment.

[2] The Attorney General has filed an amicus brief on behalf of the State in support of Tarrant County.

10

suggests that only negligent acts or omissions purposefully undertaken in support of the covered activity are sufficient to invoke the statutory immunity.

The County submits that this analysis, which relies on notions of purpose and intention, is misguided and, moreover, inapplicable in this context. While some negligent omissions are conscious choices for a purpose, others are failures to act because of a lack of awareness. For example, here Officer Barham and others failed to perceive a duty to place a warning sign or move the broken chair before Bonner's fall, failed to coordinate with one another, or simply forgot about the broken chair after having previously been aware of its circumstances. The County concludes that the immunity statutes must be broader than the court of appeals' opinion suggests to account for negligent omissions which are clearly within their intended scope.

We agree. The two statutes immunize negligent acts and omissions that are reasonably related to the covered programs or activities, even when the relationship is indirect. As a practical matter, this includes acts or omissions, which give rise to damages during covered programs and activities. *See, e.g., Tarrant Cty. v. Morales*, 207 S.W.3d 870, 875 (Tex. App.—Fort Worth 2006, no pet.) (applying art. 42.20 to an inmate who was injured when a row of chairs fell on her during cleaning activities in an assigned room); *Moncada v. Brown*, 202 S.W.3d 794, 799–800 (Tex. App.—San Antonio 2006, no pet.) (applying § 497.096 to an inmate injured while being transported to a work site); *Gill v. Tex. Dep't of Criminal Justice, Inst. Div.*, 3 S.W.3d 576, 581-82 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (applying § 497.096 to inmate's allegations of negligent supervision during work loading a tree stump).

11

## IV

The statutes, however, only immunize the County from liability to the extent its corporate actions or omissions were not performed with conscious indifference or reckless disregard for the safety of others. *See* TEX. CODE CRIM. PROC. art. 42.20; TEX. GOV'T CODE § 497.096 (imposing conscious indifference or reckless disregard as the liability standard for inmate claims of injury in connection with inmate activities). The County's summary-judgment motion was accordingly based on immunity from liability, not immunity from suit. The distinction is significant because immunity from suit implicates jurisdictional concerns whereas immunity from liability is an affirmative defense that must be pled and proven. *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). The court of appeals' opinion correctly characterizes the nature of the County's motion as a summary judgment based on immunity from liability, but later misstates the standard of review as a determination of subject matter jurisdiction. 568 S.W.3d at 171, 172. Other courts have similarly mischaracterized the immunity at issue here. *See, e.g., Moncada*, 202 S.W.3d at 796 (applying § 497.096 to inmate's lawsuit to dismiss for lack of jurisdiction).

Immunity from liability and immunity from suit are distinct aspects of governmental immunity under common law. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012). Immunity from liability protects governmental entities from judgments; immunity from suit protects those entities from the burdens of litigation altogether, absent legislative consent. *Id.* The Tort Claims Act waives both aspects of governmental immunity, and Bonner's pleadings assert claims within the Act's waiver. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), .025. The statutory

12

immunities at issue here, however, add back a layer of protection by narrowing the avenue for recovery for a certain class of tort claims.

For example, under article 42.20 a case falls within that class if, among other things, the defendant is one of the governmental officers or employees listed in article 42.20(c) or a governmental entity served by those individuals. TEX. CODE CRIM. PROC. art. 42.20(a), (c). The claim must also "aris[e] from" the defendant's "act or failure to act." *Id*. art. 42.20(a). And that act or failure to act must be "in connection with" a "community service program or work program" established under chapter 42 or "an inmate, offender, or releasee programmatic or nonprogrammatic activity, including work, educational, and treatment activities." *Id*. Finally, the act or failure to act must have been performed "pursuant to a court order" or "in an official capacity." *Id*. art. 42.20(a)(1). If those conditions are met, the defendant is "not liable" for damages arising from the act or failure to act, unless the act or omission was "performed with conscious indifference for the safety of others." *Id*. art. 42.20(a)(2). The Attorney General as amicus curiae submits that, in this way, article 42.20 functions like the Recreational Use Statute by raising the liability standard for certain tort claims above the standard that would otherwise apply under the Tort Claims Act. *Cf*. TEX. CIV. PRAC. & REM. CODE §§ 75.002, .003(g); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006) (applying Recreational Use Statute).

We accept that analogy. Both statutes here provide an immunity to liability—an affirmative defense the defendant must plead and prove. For that defense to prevail, the defendant asserting the immunity must establish the statute's conditions. *See* TEX. CODE CRIM. PROC. art. 42.20(a)(1) (conditioning immunity on an act or omission performed in connection with a covered program or

13

activity and performed pursuant to a court order or otherwise in an official capacity). Once the defendant establishes that those conditions exist, the burden falls on the plaintiff to establish the statute's exception to that defense, which is expressed as a heightened liability standard. *Id*. § 42.20(a)(2); *see also* TEX. GOV'T CODE § 497.096. Having concluded that this record establishes the relevant conditions for the statutory immunity to apply, we turn to the liability standard the statutes' impose to negate that immunity, an issue the court of appeals did not reach under its analysis.

Article 42.20 describes the heightened standard as "conscious indifference for the safety of others." TEX. CODE CRIM. PROC. art. 42.20(a)(2). Section 497.096 uses the phrases "intentional, wilfully or wantonly negligent, or performed with conscious indifference or reckless disregard for the safety of others" to describe its standard. TEX. GOV'T CODE § 497.096. None of these terms are defined in the statute, but the common law has some familiarity with them. "'[C]onscious indifference' denotes a decision, in the face of an impending harm to another party, to not care about the consequences of the act which may ultimately lead to that harm." *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex. 1985). It "means more than mere negligence." *Smith v. Babcock & Wilcox Const. Co.,* 913 S.W.2d 467, 468 (Tex. 1995) (per curiam). "Willful," "wanton," and "reckless" conduct fall into "a penumbra of what has been called 'quasi-intent'" generally described as "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 34, 212, 214 (5th ed. 1984).

The County argues that these words and phrases are frequently used to describe "gross negligence" and points to several cases that have interpreted the heightened liability standard here to be just that. *See Morales*, 207 S.W.3d at 874-76 (applying art. 42.20); *City of Lubbock v. Land*, 33 S.W.3d 357, 359 (Tex. App.—Amarillo 2000, no pet.) (same); *Gill*, 3 S.W.3d at 581-82 (applying § 497.096); *Cobb v. Tex. Dep't Crim. Justice*, 965 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (same).

Bonner contends that conscious indifference is not the same as gross negligence, but rather only one of its components, suggesting that it necessarily conveys a lesser standard of culpability. Bonner relies on *Morales*, which indeed identifies conscious indifference as an element of gross negligence:

> Gross negligence consists of two elements: (1) the actor has actual, subjective awareness of the risk involved but nonetheless proceeds with conscious indifference to the rights and safety or welfare of others and (2) the conduct at issue is an act or omission involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

*Morales*, 207 S.W.3d at 874. The *Morales* court in turn cites *State v. Shumake*, which describes "gross negligence as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." 199 S.W.3d 279, 287 (Tex. 2006). According to Bonner, the "conscious indifference" standard, when viewed as a mere element of gross negligence, requires only evidence that the County proceeded with knowledge that harm was a "highly probable" consequence of its acts or failures to act. He contends that the standard does not require evidence that the County's acts or omissions also involved an extreme degree of risk.

15

We disagree. *Shumake* indicates that the defendant's mental state or conscious indifference and its awareness of the risk are interrelated. *Id.* *Shumake* cites *Moriel*, a seminal case on gross negligence, which aptly observes: "The requirement of conscious indifference, which our law requires, is superfluous unless it requires proof that the defendant had actual subjective knowledge of an extreme risk of serious harm." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). Even *Morales*, the case from which Bonner fashions his argument for a lesser standard, agrees that "conscious indifference" includes subjective awareness of an extreme risk. *Morales*, 207 S.W.3d at 876. The *Morales* court reasoned that the inmate's allegations were "sufficient to demonstrate that the County performed an act or omission involving an extreme risk to others, that the County had actual awareness of the risk, and that the County proceeded with knowledge that the harm was a highly probable consequence of its alleged failure to act." *Id.* It then concluded that the inmate's suit was not barred because it fell within article 42.20's "conscious indifference" exception. *Id.* We have no complaint with the court's analysis. Conscious indifference in the context of a tort indeed consists of an act or omission involving an extreme risk to others, an actual awareness of that risk, and knowledge that harm was a highly probable consequence of the act or omission.

Bonner finally argues that even if extremity of risk and subjective awareness of that risk are relevant factors, the evidence nevertheless raises a genuine issue of material fact because the people who were likely to encounter the chair in the multipurpose room and face a risk of injury were diabetics like himself. The County responds that no evidence exists that diabetics face any greater risk of injury from sitting in collapsing chairs than anyone else. The County concedes that the

16

evidence demonstrates some degree of peril from the damaged chair but no aggravating circumstances other than the absence of any warning attached to the chair.

Although Officer Barham was aware that the multipurpose room was sometimes used by jail nurses for medical examinations, the record includes no evidence of the frequency of these examinations, how likely the chair was to be used in the examinations, or other circumstances, which might have made those using the chair particularly vulnerable to extreme injury. As falls go, a collapsing chair would seem to present a lower risk of injury than most. Nor is there evidence that Officer Barham or his supervisor perceived anything other than a slight risk of harm from the defective chair. Barham's subjective perception about this risk may be inferred from his previous experience: the chair unexpectedly collapsed and he fell, causing him embarrassment, but not injury. Even so, Barham and his supervisor took steps to mitigate any continuing risk. After damaging the chair, Barham informed his supervisor about the accident and followed his supervisor's instructions, writing an incident report and removing the chair to the multipurpose room, an area of limited access and limited use, accessible only with a key. These actions may have been ultimately ineffective to prevent Bonner's fall, but they do not manifest conscious indifference or recklessness.

\* \* \* \* \*

At the summary-judgment hearing, the trial court concluded that both immunity statutes, article 42.20 and section 497.096, applied to Bonner's claims. The court further concluded that there was evidence of the County's negligence and actual knowledge of a risk, but no "evidence that combines probability and severity to show that the risk involved is extreme." The court accordingly granted the County summary judgment based on the County's statutory immunity from liability.

17

The court of appeals reversed and remanded, concluding that the immunity statutes did not apply because the connection between the County's acts and omissions and Bonner's medical treatment was insufficient to invoke the statutory protection. 568 S.W.3d at 173-74.

We, however, agree with the trial court that the statutes apply here to bar the County's liability. We further agree with the trial court's summary judgment which determined that there was no evidence or fact issue regarding the County's conscious indifference and thus no basis to negate the statutory immunity. We accordingly reverse the court of appeals' judgment and render judgment that Bonner take nothing.

_____
John P. Devine
Justice

Opinion Delivered: May 24, 2019