

# NUMBER 13-21-00246-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS DEPARTMENT OF
CRIMINAL JUSTICE,                                         Appellant,

**v.**

DANIEL CHRISTOPHER TAYLOR,                               Appellee.

### On appeal from the 343rd District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Texas Department of Criminal Justice (TDCJ) appeals from the trial

court's denial of its plea to the jurisdiction. In two issues, TDCJ argues that there is no

waiver of immunity under the Texas Tort Claims Act (TTCA) for appellee Daniel

Christopher Taylor's causes of action because: (1) Taylor failed to plead a viable claim

for grossly negligent use of a motor-driven vehicle or motor-driven equipment; and (2) Taylor failed to plead a viable claim for grossly negligent use of personal tangible property. We affirm.

## I.    BACKGROUND

Taylor was incarcerated in TDCJ. On January 10, 2018, Taylor began a three-day-transfer by bus to another unit (Darrington Unit) for medical treatment. While being transported, Taylor sustained burn injuries to his gluteal areas and legs when his bus seat reached excessive temperatures due to an under-the-seat heater. Taylor suffered second- and third- degree burns that required a skin graft.

On January 4, 2021, Taylor sued TDCJ, asserting grossly negligent use of a motor-driven vehicle or motor-driven equipment.[1] Specifically, Taylor asserted that TDCJ breached its duty when the bus driver or other TDCJ personnel on the bus failed to turn off or reduce the output of the bus heater, which they knew was positioned directly beneath the seats upon which incarcerated passengers sat.[2] Alternatively, Taylor asserted gross negligence in the use of tangible property. The illustration below reflects the heater directly beneath the seat that Taylor claims caused his injuries.

---

[1] Taylor sued other defendants, including the manufacturer of the heater. Those defendants are not parties to this appeal.

[2] The heater was manufactured by Bergstrom, Inc. An inspection by Bergstrom's Vice President of Engineering Richard Knott revealed the metal cage surrounding the heater was not manufactured or supplied by Bergstrom, and the grey plastic bus seats were not the "bus seats for which Bergstrom understands that its under[-]seat heaters are used" as they were plastic seats, which are more conducive to heat. Knott further asserted the airflow in the heater was backwards when compared to the airflow as originally designed and manufactured by Bergstrom in 2007. He further clarified that the motor inside this heater and the axial fan blade were not the original parts that were installed in the heaters as manufactured and sold by Bergstrom in 2007. Thus, TDCJ obtained parts from a third-party and installed the heaters under plastic seats.

2



On March 22, 2022, TDCJ filed a general denial and a plea to the jurisdiction. In its plea, TDCJ asserted that it has immunity because: (1) Taylor failed to provide evidence of gross negligence; (2) the bus's heater only furnished the condition that made Taylor's injury possible; (3) the failure to repair or maintain does not qualify as "use" of the heater; and (4) "nonuse" of the heater does not involve the TTCA. Taylor responded, attaching the following pertinent evidence: his own deposition testimony; deposition testimony from Bobby Sansing, an inmate chained to Taylor during the transport; a report from Captain Everardo Gonzalez, a TDCJ employee; and an exhibit illustrating the proximity of the guards, inmates, and the heater on the bus.

## A.    Taylor's Testimony

In his deposition, Taylor testified that he suffered a spinal cord injury in 1993 and lacks sensation from the waist down. On January 10, 2018, Taylor fell asleep immediately upon entering the medical transport bus. The next thing he remembers is Sansing waking him up telling him, "We got to move. I don't know how you're sitting there sleeping, but I can't sit in this seat [any] more . . . They won't turn the heater down. Let's move . . . I don't

3

see how you're sitting over there sleeping . . . I am about to burn up." Taylor said that Sansing touched the outside of the seat and said, "Man, this thing is on fire [and] they won't turn it down. We got to move." According to Taylor, inmates were requesting that the guards turn down the heat.[3] After the men moved seats to the back of the bus, Taylor began to feel wet and cold. He felt discomfort because his wet pants "melted." It was later discovered that Taylor's pants were "soaking wet" because he suffered burn blisters, which had drained.

Upon arrival at the Darrington Unit, Taylor was examined by a doctor. The doctor called TDCJ Captain Miller and said, "Hey, you need to look at this." After Captain Miller witnessed the burns, Taylor specifically remembered the last words out of Captain Miller were: "I'm calling transportation. They need to know about this." Taylor testified these injuries caused him to suffer from uncontrollable leakage of fecal matter from his anus. As a result, he now has to wear adult diapers.

## B. Sansing's Testimony

In his deposition, Sansing testified that at the time of transport he required heat restrictions due to high blood pressure and was not allowed to be in the heat. On this particular day, there were no other seats available in the bus but the two seats which the heater was directly beneath. Sansing stated that Taylor immediately fell asleep. About one hour into the ride, Sansing was sweating profusely while the inmates were yelling at the guards to please cut down the heater. According to Sansing, the guards sat two rows behind him and Taylor.

---

[3] Specifically, Taylor stated the inmates were saying, "Turn the fucking heater off."

4

After numerous pleas to turn down the heater went unanswered, Sansing was forced to stand up "90 percent of the ride" because the "back of the legs and my buttocks, my back, and all that was on fire" because "we're sitting right on top of the heater." When he couldn't touch his seat anymore due to the high temperature, another inmate confirmed "that thing's on fire." After crouching on the bus for over one hour, Sansing stated that as soon as another seat became available, he woke Taylor up, and they moved seats because the radiating heat was unbearable. Once they arrived at another medical unit facility, Sansing noticed Taylor "was soaking wet in the back of his legs, and his pants were sticking . . . to the back of his legs."

## C. Captain Gonzalez's Report

On April 10, 2018, Taylor filed a grievance, which prompted Captain Gonzalez to initiate an investigation into the matter. In his report, Captain Gonzalez confirmed that Taylor suffered an 8x7 centimeter wound to his left gluteal fold and a 7-centimeter wound to his right gluteal area, which were initially treated January 10–12, 2018. On January 29, 2018, Taylor was transported to a hospital and received a skin graft. Almost one month later, on February 23, 2018, Taylor was discharged from the hospital and returned back to his unit. According to Captain Gonzalez, "Taylor never informed the officers that he had sustained any injuries during his transport," the officers "state[d] that[]Taylor never informed them of his injuries while on or off the bus, and Taylor did not have any method of transport restrictions at the time of his transport." Captain Gonzalez's review of the heaters reflected the rear heater temperature of 202 degrees and that it was working as a discharge not as an air intake.

5

Following a hearing, the trial court denied TDCJ's plea to the jurisdiction. TDCJ appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     PLEA TO THE JURISDICTION

Because it is dispositive, we address TDCJ's second issue first. Specifically, TDCJ argues that "using a heater on a cold day is not [a] grossly negligent use of tangible personal property within the meaning of the TTCA."

## A.     Standard of Review and TTCA

We review a trial court's ruling on a plea to the jurisdiction de novo. *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). If a government entity challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction" and must leave resolution of the issue to the fact finder. *Id.* at 227–28. "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant." *Id.* "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.*

The TTCA generally affords a limited waiver of sovereign immunity when, as limited by Taylor's causes of action, either (1) personal injury is proximately caused by the negligence of an employee acting within his scope of employment if the personal injury arises from the use of a motor-driven vehicle or motor-driven equipment, and the

6

employee would be personally liable to the claimant according to Texas law; or (2) personal injury is caused by the use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A), (2).

**B.      Section 497.096 and Article 42.20 Immunities**

As relevant here, § 497.096 of the Texas Government Code and Article 42.20 of the Texas Code of Criminal Procedure protect governmental entities from liability in connection with certain inmate activities, including the medical transport in this case, unless the action or inaction was performed with conscious indifference.[4]  *See* TEX. GOV'T CODE ANN. § 497.096 (providing that an employee of a political subdivision is not liable for damages arising from an act or failure to act in connection with an inmate activity unless it was done with conscious indifference); TEX. CODE CRIM. PROC. ANN. art. 42.20 (granting immunity to governmental entities for acts, or failure to act, performed in an official capacity unless the act was performed with conscious indifference to the safety of others); *see also Evans v. Tex. Dep't of Crim. Just.-Inst. Div.*, No-01-07-00847-CV, 2008 WL 2548986 (Tex. App.—Houston [1st Dist.] June 26, 2008, no pet.) (mem. op.) (providing that § 497.096 applied to an inmate's claim against TDCJ for injuries the inmate sustained on a bus during medical transport). Once the governmental entity proves that the statutes are applicable, the burden then falls on the inmate "to establish the statute's exception to that defense, which is expressed as a heightened liability standard." *Tarrant County v. Bonner*, 574 S.W.3d 893, 901 (Tex. 2019).

---

[4] The parties agree that both statutes apply to the facts in this case.

## C.    "Conscious Indifference"

In its plea to the jurisdiction, TDCJ claimed it retains its sovereign immunity because its guards are immune under § 497.096 because they did not act with conscious indifference for Taylor's safety, and this record fails to raise a fact issue under this heightened standard. TDCJ asserts that when "viewed from the standpoint of the TDCJ officers conducting a medical transport, it was an extremely cold day, and the inmates on the bus were not allowed to wear coats"; thus, "the use of the heater was not unreasonable or grossly negligent." While we agree with TDCJ that merely using a heater on a cold day is not grossly negligent per se, it appears TDCJ misinterprets Taylor's complaint. That is, Taylor is not challenging the general use of the heater. Instead, Taylor complains that the guards "intentionally and/or recklessly allowed the heater to greatly exceed maximum safe operation and cause injury, even after [they were] repeatedly begged by the inmates to reduce or terminate the heat" and that as a result of TDCJ's "gross negligence, recklessness and/or negligence," Taylor suffered extensive injuries. *Cf. Strode v. Tex. Dep't of Crim. Just.,* 261 S.W.3d 387, 391 (Tex. App.—Texarkana 2008, no pet.) ("Strode did not allege TDCJ officials were either ; grossly negligent or wantonly negligent, nor did Strode claim in his petition that TDCJ officials executed their supervisory duties with conscious indifference or reckless disregard for the safety of others.") (internal citations omitted); *Gill v. Tex. Dep't of Crim. Just.,* 3 S.W.3d 576, 579 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (affirming summary judgment for TDCJ where an inmate was injured while doing prison tree work because the inmate alleged only negligent supervision against the TDCJ employee and did not allege the supervisor

8

was grossly negligent to avoid supervisor's immunity under § 497.096).

Although these terms are not defined in the statute, "[c]onscious indifference in the context of a tort indeed consists of an act or omission involving an extreme risk to others, an actual awareness of that risk, and knowledge that harm was a highly probable consequence of the act or omission." *Bonner*, 574 S.W.3d at 902. We find our sister court's analysis of "conscious indifference" as applied to an inmate's case instructive. *See Tarrant County v. Morales*, 207 S.W.3d 870, 874 (Tex. App.—Fort Worth 2006, no pet.).

In *Morales*, while in a room of stadium seating, Morales, an inmate in the Tarrant County jail, bent down to pick up a piece of garbage from the floor. *Id.* at 873. As she put her hand on one of the seats, the row of chairs fell on her, and she allegedly sustained injuries as a result. *Id.* Morales first asserted general negligence against the county but then amended her pleadings after the county's plea to the jurisdiction to allege that her claims fell within Article 42.20, alleging the county acted with conscious indifference in failing to correctly install the seating; failing to properly fasten the seating; failing to maintain the seating; and failing to warn her of the hazardous condition. *Id.* The trial court denied the plea, and the county appealed, claiming Morales did not plead sufficient facts to bring her suit within the "conscious indifference" exception to the county's immunity under article 42.20 and that there was no evidence the county created an unreasonable risk of harm to her. *Id.*

The appellate court affirmed the denial of the plea, holding that Morales pleaded sufficient facts to invoke the trial court's jurisdiction over her claims:

Morales alleged that the County knew that the stadium seats that fell on her were not properly fastened to the floor, but took no steps to fix the problem or to warn Morales of the danger. These allegations are sufficient to demonstrate that the County performed an act or omission involving an extreme risk to others, that the County had actual awareness of the risk, and that the County proceeded with knowledge that the harm was a highly probable consequence of its alleged failure to act.

*Id.* at 876. "To establish conscious indifference, it is only necessary to show that the [guards] proceeded with knowledge that the harm was a 'highly probable' consequence of the act or failure to act; it is not necessary to show that the actor actually intended to cause harm." *Id.* at 874; *see also Bonner* 574 S.W.3d at 902 (confirming it had "no complaint with the [*Morales's*] court's analysis").

In *Bonner*, a detention officer damaged a chair, causing the chair to collapse, and the officer to fall on the floor. *Id.* at 895. The officer's supervisor then instructed the officer to place the chair in the jail's multipurpose room for disposal. *Id.* at 895. The officer "knew the room was occasionally used by nurses who were brought to the jail to treat diabetic inmates." *Id.* Four days later, Bonner, an inmate, went to the multipurpose room for diabetes treatment, used the damaged chair, collapsed to the floor, and sued the county for injury allegedly sustained. *Id.* at 894. The supreme court stated that although the officer was aware the multipurpose room was sometimes used for medical examinations, there was "no evidence of the frequency of these examinations, how likely the chair was to be used in the examinations, or other circumstances, which might have made those using the chair particularly vulnerable to extreme injury." *Id.* at 902–903. Moreover, there was no evidence that the officer "perceived anything other than a slight risk" from the chair because "in his previous experience . . . the chair unexpectedly collapsed and he

10

fell, causing him embarrassment, but not injury." *Id.* at 903. Furthermore, the court noted that the county took steps to mitigate any continuing risk by removing the chair to a room with limited access and limited use, and while these actions may have been ineffective to prevent Bonner's fall, they did not amount to conscious indifference. *Id.*

## D. Application of "Conscious Indifference"

TDCJ states that "no one had ever previously complained about that seat becoming too hot" and that it had never received a grievance regarding the malfunctioning of the heater; therefore, the guards could not have acted with conscious indifference because they had no knowledge the heater was malfunctioning. Specifically, TDCJ states "there is no specific proof that TDCJ officers were aware that the fan inside the rear heater of the bus would cause an injury." However, conscious indifference requires an omission involving an extreme risk to others, the refusal to turn down the heat; an actual awareness of that risk, the inmates repeatedly complaining they were "burning up"; and knowledge that the harm was a highly probable consequence of the act or omission, Sansing no longer being able to sit down and the guards responding they would not turn down the heat. *See Bonner*, 574 S.W.3d at 902. Thus, the guards did not need to have actual knowledge that the fan inside the bus was malfunctioning to act consciously indifferent because the inmates repeatedly informed the guards there was a problem with the heat, such that Sansing could no longer sit down.

There was evidence that "everyone yelled at the guards," pleading for them to turn down the excessive heat: "Can you please turn down the heater, please"; "Hey, turn the heater down"; "Hey, turn it off"; "It's hot in here"; "We're burning up" for at least *four* hours.

Specifically, Sansing and Taylor testified that the inmates belligerently yelled at the guards to turn down the heat, "[a]nd the guards g[o]t irritated, and [said,] 'Well if you talk to me that way, I'm not going to do anything for you.'" In addition, Sansing, who was sitting in front of the guards, testified that he was unable to sit on the burning seat and was forced to crouch for over an hour and then stand for the remainder of the trip because the seat was burning him. Thus, Taylor's claims that the guards had "an actual awareness" of a risk and knowledge that harm was highly probable is supported by (1) the inmates' complaints that they were "burning up"; (2) Sansing's act of crouching for over an hour as a result of the excess heat; (3) the guards' knowledge that these inmates were under medical care and on a medical transport bus; and (4) the guards' statements to the inmates that they were not "going to do anything" to help them. Unlike *Bonner* where the county took steps to mitigate any continuing risk, here, according to Sansing, these guards "just kept moseying . . . they choose pretty much to ignore you." *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) ("We have often interpreted ['conscious indifference'] to require proof that a party knew the relevant facts but did not care about the result."). This evidence, therefore, raises a fact issue regarding whether the guards proceeded with knowledge that the heater would cause an injury as a consequence of their failure to turn off the heater.

Accepting Taylor's pleadings as true and construing his pleadings liberally in his favor, we hold Taylor provided some jurisdictional evidence to create a fact issue regarding whether TDCJ acted with conscious indifference to his safety, including that TDCJ knew the inmates were complaining of the extreme heat but did nothing to remedy

12

the complaints or check the heat. *See Doyal v. Tex. Dep't of Crim. Just.–Institutional Div.*, 276 S.W.3d 530, 537 (Tex. App.—Waco 2008, no pet.) ("Section 497.096 is an affirmative defense on which the defendant bears the burden of proving that [it] did not act with intentional, willful, or wanton negligence or reckless disregard for the plaintiff's safety."); *see also Tex. Dep't of Crim. Just. v. Hetzler*, No. 12-16-00002-CV, 2017 WL 2665659, at *3 (Tex. App.—Tyler June 21, 2017, no pet.) (mem. op.) ("[T]here is a fact issue regarding whether TDCJ was grossly negligent since there is evidence that its employees knew the floor was in need of repair but did not believe the problem to be serious enough to warrant its preventing Hetzler from working around it."). Because there is a fact issue as to whether the guards acted with conscious indifference to the safety of others, the protections of § 497.096 and Article 42.20 as they relate to the TTCA are inapplicable here.

### E.    Causation

As a sub-issue, TDCJ argues there is no causation because "[t]he use of the heater here created the environment for the fan to cause injury." However, we are unable to articulate TDCJ's argument that its use of the heater merely created an "environment" for the "fan to cause Taylor's injury." *See* TEX. R. APP. P. 38.1(i) (providing that the brief must contain a clear and concise argument for the contentions made). Therefore, we reject this argument.

Additionally, TDCJ argues that a "burn injury from the use of a vehicle heater on a cold day is not a foreseeable harm, and Taylor has failed to demonstrate proximate causation as required under the TTCA." This is the extent of its argument regarding this

13

issue. As relevant here, the TTCA waives immunity if personal injury is caused by a condition or use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). "Use" in the context of § 101.102(2) means "to put or bring into action or service; to employ for or apply to a given purpose*." San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004).

"Proximate cause has two elements: cause in fact and foreseeability." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). "Cause in fact is established when 'the act or omission was a substantial factor in bringing about the injury'" and, without it, the harm would not have occurred." *Rattray v. City of Brownsville*, No. 20-0975, 2023 WL 2438952, at *10 (Tex. Mar. 10, 2023) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)). Foreseeability "requires 'the actor [to] have reasonably anticipated the dangers that his negligent conduct created for others.'" *Id.* (citing *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 519 (Tex. 2019)). "The danger that must be reasonably anticipated is only the 'general danger, not the exact sequence of events that produced the harm . . . .'" *Id.* (citing *McKenzie*, 578 S.W.3d at 519). In making this causal assessment under the TTCA, "'we look to the record and pleadings to determine if the alleged cause is too geographically or temporally attenuated from the alleged effect.'" *Id.* (citing *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 929–30 (Tex. 2015). "[P]roximate cause is ultimately a question for a fact-finder." *Ryder*, 453 S.W.3d at 929. Thus, we need only determine whether Taylor's pleadings and the evidence create a fact question regarding the causal relationship between the alleged conduct and his injuries. *Id.*

14

It is undisputed that other inmates installed the heater on this bus under the supervision of TDCJ, the heater could only function when the bus was turned on, and only the bus driver could regulate the temperature. It is also undisputed that the heater was used on this particular day and that Taylor was burned as result of the heater's excessive temperatures. Therefore, we conclude Taylor has met the "cause in fact" requirement because "the tortious act can be a substantial factor in causing the injury, even if it is not the sole factor." *Rattray*, 2023 WL 2438952, at *11; *McKenzie*, 529 S.W.3d at 187 ("A plaintiff must show the tangible property to be the instrumentality of harm."). That is, Taylor has met his burden to create a fact issue on whether his burn injuries arose from the guards' failure to turn down the heater. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010) (providing that a tortious act is a cause in fact if serves as "a substantial factor in causing the injury and without which the injury would not have occurred").

Next, TDCJ asserts that "the injury was not foreseeable from transporting Taylor in the prison bus to a medical facility—or even from turning the heater on." However, foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 478 (Tex. 1995). According to Taylor, a reasonable person could have foreseen that not turning down a heater under a plastic seat might lead to a burn injury after inmates repeatedly complained about the excessive heat while on route to receive medical treatment. Taylor also asserts that the alleged harm is of the very character that

15

might reasonably have been anticipated. *See id.* In fact, TDCJ's investigation revealed that the heat from the heater reached temperatures of 202 degrees. "Foreseeability requires only that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Ryder*, 453 S.W.3d at 929.

Based on Taylor's allegations and the evidence presented, a reasonable juror could find a sufficient nexus between the operation or use of the heater and Taylor's burn injuries, and "the alleged cause is not too geographically or temporally attenuated from the alleged effect." *Rattray*, 2023 WL 2438952, at *10. The evidence here "is far from dispositive, but it is enough for [Taylor] to meet [his] burden of showing that [TDCJ's] theory of causation (or lack thereof) cannot yet be deemed established as a matter of law." *Id.* at *11. We conclude that the guards' conduct of ignoring the inmates' complaints of the heat being so high such that Sansing could no longer sit in his seat—"creates a fact question" regarding the causal relationship between the guards' conduct and Taylor's injuries. *See Miranda*, 133 S.W.3d at 228. Therefore, Taylor has alleged an injury arising from the use of the heater for purposes of § 101.021(2) of the TTCA, and we cannot conclude that the trial court erred by denying TDCJ's plea. *See id.* at 227; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). We overrule TDCJ's second issue in its entirety.

16

###### III.     CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
15th day of June, 2023.